THERESE C. JOHNSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 866. Promulgated July 31, 1946.

*Jo V. Morgan, Esq., W. F. Finch, Esq.,* and *Walter E. Travers, Esq.,* for the petitioner.

*Charles P. Bagley, Esq.,* for the respondent.

OPINION.

TYSON, *Judge*: This proceeding involves determination of the amount of petitioner's taxable gain derived from the sale in 1938 of property consisting of land designated in our findings as tract No. 3, and a building located thereon.

The first issue is whether petitioner's basis of the land and building is to be computed without including therein the fair market value of the building when acquired by her in 1929.

The building was erected in 1925 by petitioner's lessee of the underlying real estate at the lessee's expense. The lessee having subsequently defaulted in payment of rent, petitioner in 1929 recovered possession and enjoyment of the land and acquired the building through court action. In 1938 petitioner sold the land and building for the consideration shown in our findings.

The petitioner contends that the fair market value of the building when acquired in 1929 (subject to adjustment) should be included in its cost basis. The respondent allowed no cost basis for the building, but allowed a cost basis of $6,598.34 for the land upon which the building was located.

Section 113 (a) of the Revenue Act of 1938, here applicable, provides that the basis (unadjusted) of property shall be the "cost of such property" with certain exceptions not material here. The Supreme Court, in *Detroit Edison Co.* v. *Commissioner*, 319 U. S. 98, left no doubt as to the meaning of "cost," as used in an identical section of the Revenue Act of 1936, when applied to a situation where the taxpayer, owner of property, had acquired improvements thereon paid for by its customers (and costing the taxpayer nothing) in order to procure distribution of electrical energy to those customers by the taxpayer. The Court, in holding that the taxpayer was not entitled to depreciation on the improvements, because the improvements had cost it nothing, stated:

But we think the statutory provision that the "basis of property shall be the cost of such property" (§ 113 (a)) normally means, and that in this case the Commissioner was justified in applying it to mean, cost to the taxpayer.

See also *Jones* v. *Commissioner*, 139 Fed. (2d) 564; and *Reisinger* v. *Commissioner*, 114 Fed. (2d) 475.

The Court in *Detroit Edison Co.* also expressly held against a contention of the taxpayer that the improvements acquired were either gifts or contributions to its capital, paid for by its customers, and that consequently it had the right under section 113 (a) (2) and 8 (B) to take the basis of the donors or transferors.

Since the building here involved cost the petitioner nothing, we think that the *Detroit Edison Co.* case is dispositive of the first issue, and, applying the principle therein established and applied in the other

cited cases, we conclude that the basis of the land and building is to be computed without including therein the fair market value of the building when acquired by the petitioner.

The fact that the cited cases involved determination of cost basis for purposes of depreciation rather than determination of gain or loss on a sale is of no significance, cost basis in both classes of cases being determined by the same provisions of the statute, section 113 (a), *supra*. That cost as used in that section means cost to the taxpayer when applied to determination of gain or loss upon a sale of property, was held in *Reis* v. *Commissioner*, 142 Fed. (2d) 900, 903. See also *J. C. Vandenberge*, 3 T. C. 321; affd., 147 Fed. (2d) 167; certiorari denied, 325 U. S. 875.

The case of *Greenwood Packing Plant* v. *Commissioner*, 131 Fed. (2d) 787, cited by petitioner, was decided prior to the decision in the *Detroit Edison Co.* case and, so far as its effect might otherwise be apposite here, such effect is nullified by the holding in the latter case. However, it may be said that, while such a question as was presented and decided in *Detroit Edison Co.* lurks in *Greenwood Packing Plant*, that question was not considered in the latter case nor was the decision therein based upon the solution of such a question; the question there considered being only such as is mentioned in the second paragraph below as being presented by the further contention of the respondent herein.

On the first issue, we hold that petitioner's gain on the sale of the property in 1938 is to be computed without including in the unadjusted cost basis thereof the fair market value of the building in 1929.

Having reached the above conclusion on the first issue, it is unnecessary to consider the further contention of the respondent or the numerous authorities cited pro and con by the parties thereon; that contention being to the effect that it was the duty of the petitioner to report the value of the building when acquired by her in 1929 as income in her return for that year, under the doctrine of *Helvering* v. *Bruun*, 309 U. S. 461, and that, having failed to do so, the petitioner can not, on the sale of the land and building in 1938, include in her basis the fair market value of the building when acquired.

We have not found the fair market value of the building when acquired by petitioner in 1929 because, in view of our conclusion just above set out, it is immaterial as to what such value was.

As to the second issue, the respondent, in computing the amount of petitioner's gain from the sale of the land (tract No. 3) and building thereon, determined that the cost basis of the land was $6,598.34. Petitioner contends that its proper cost basis is $12,350. Based upon a careful consideration of all the facts and circumstances disclosed by the evidence bearing on this issue, we have found the basis of the land

to be $10,000. Consequently we hold that the $10,000 should be included in the cost basis of the property sold by petitioner in 1938.

On the third issue, the petitioner asks that numerous items be included in the basis of the property sold as additional costs thereof. Among such items are taxes and special assessments enumerated in the tabulation in our findings as having been paid by petitioner in 1928, 1929, and 1930, as well as $1,500 attorney fees also shown in our findings as having been paid in connection with the litigation through which petitioner repossessed tract No. 3 and acquired the building located thereon. Neither the amount of the taxes nor the amount of the attorney fees, nor any portion thereof, is a proper addition to the cost basis of the property as capital expenditures. They were, in fact, only deductible from gross income in the respective years in which they were paid. See *Mary E. Evans*, 42 B. T. A. 246, and *Estate of Austin C. Brant*, 44 B. T. A. 1306. We hold that the taxes and attorney fees referred to are not a proper addition to petitioner's cost basis of the property for the purpose of determining the gain derived from the sale thereof.

The situation is otherwise, however, as to $1,088.39 enumerated in the tabulation as paid on special assessments for sidewalks, curbs, gutters, sewers, paving, etc. These are "assessed against local benefits of a kind tending to increase the value of the property assessed." Sec. 23 (c) (4), Revenue Act of 1938. The amount ($1,088.39) paid on such assessments consequently constitutes a proper part of the cost basis of the property, and we so hold. *Champion Coated Paper Co.*, 10 B. T. A. 433; *F. M. Hubbell Son & Co.*, 19 B. T. A. 612; affd., 51 Fed. (2d) 644; certiorari denied, 284 U. S. 664. Cf. *F. A. Smith*, 11 B T. A. 301, and *Belfast Investment Co.*, 17 B. T. A. 213. The improvements for which the assessments were paid are not subject to depreciation allowances. *F. M. Hubbell Son & Co.*, supra.

As shown by the tabulation in our findings, petitioner made numerous other expenditures with respect to tract No. 3 and the building and improvements thereon. The first of those, a payment of a balance of $2,451 due on a sprinkler system installed by the lessee prior to the petitioner's repossession in 1929, is clearly a capital expenditure and should be included in petitioner's cost basis, less depreciation of 2 per cent to date of sale. The expenditures of $3,537.11 made in 1929 and 1930, as shown by the tabulation (which are other than those made for taxes of which we have already disposed), the 1932 expenditure of $237 for the construction of a roof over two balconies, and the 1933 expenditure of $808.58 for changing the stairway and entrance to the building, are all, we think, clearly capital expenditures, and the total of these expenditures, $4,582.69, less 2 percent annual depreciation to the date of sale, should be added to petitioner's basis as of 1938. The

evidence as to the remaining expenditures showed their general purposes, as indicated in our findings of fact, but the evidence was insufficiently detailed or convincing to establish their exclusive relation to improvements of a permanent nature. We hold, therefore, that as to these items, petitioner has failed to overcome the presumption of correctness of the respondent's determination, and they may not be included in her basis.

On the fourth issue, petitioner contends that three items not involved in the foregoing discussion should be deducted as selling expense in determining her gain on the sale of the property. One of those items, $25 for a quitclaim deed to clear title to the property sold, should be deducted, the respondent so conceding. Also, the item of $2,000 paid an attorney for his services in connection with the sale should be deducted. Respondent allowed $500 for this fee, but this amount should be increased to $2,000. The remaining item of $231 for revenue stamps should not be deducted, since the petitioner has already received the benefit thereof by reason of the fact that respondent in his adjustments allowed that item as an "additional deduction."

On the fifth issue, it is the petitioner's contention that her profit from the sale of the land and building should be reported on the installment basis, as provided by section 44 (b) of the Revenue Act of 1938 [1] and articles 44-1, 44-2, and 44-3 of Regulations 101. Under the provisions of section 44 (b), *supra*, for a sale of realty to qualify as an installment sale, it is required, *inter alia*, that the "initial payments" received shall not exceed 30 per cent of the "selling price." Article 44-2 of Regulations 101 [2] provides that in the sale of mort-

---

[1] SEC. 44. INSTALLMENT BASIS.

*         *         *         *         *         *         *         *

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY.—In the case * * * of a sale or other disposition of real property, if * * * the initial payments do not exceed 30 per centum of the selling price * * * the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis [installment basis] and in the manner above prescribed in this section. As used in this section the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made. [Brackets supplied.]

[2] ART. 44-2. *Sale of real property involving deferred payments.*—Under Section 44 deferred-payment sales of real property include * * * (b) sales in which there is an immediate transfer of title, the vendor being protected by a mortgage or other lien as to deferred payments. Such sales * * * fall into two classes when considered with respect to the terms of sale, as follows:

(1) Sales of property on the installment plan, that is, sales in which the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable year in which the sale is made do not exceed 30 per cent of the selling price;

(2) Deferred-payment sales not on the installment plan, that is, sales in which the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable year in which the sale is made exceed 30 per cent of the selling price.

In the sale of mortgaged property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser, shall be included as a part of the "selling price", but the amount of the mortgage, to the extent it does not exceed the basis to the vendor of the property sold, shall not be considered as a part of the "initial payments" * * *

gaged property, "whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser," the amount of the mortgage shall be included "as a part of the selling price," but, to the extent the amount of the mortgage does not exceed the basis to the vendor of the property sold, it shall not be considered as a part of the initial payment.

The disagreement of the parties as to whether the initial payment is less than 30 per cent of the selling price hinges solely upon the amount by which the $25,500 assumed mortgage exceeds petitioner's basis without deducting selling expenses; for the initial payment is the amount of such excess plus the $25,000 paid in cash.

We have found the cost of the land to be $10,000, the cost of nondepreciable special assessments made for local benefits to be $1,088.39, and the cost of depreciable improvements to be $7,033.69, and that in computing the petitioner's basis the latter amount should be reduced by depreciation at the rate of 2 per cent annually to the date of the sale. The basis of the petitioner, when computed in accordance with such findings, will be less than the assumed mortgage of $25,500, and the excess of the assumed mortgage over the adjusted basis, when added to the cash received of $25,000 will result in an initial payment of less than $34,413, which latter figure is 30 per cent of the selling price of $114,710. This entitles petitioner to report the taxable gain on the sale of the land and building on the installment basis, and we so hold. It, therefore, is unnecessary to consider the petitioner's alternative contention under the sixth issue that she is entitled to report the gain on the deferred-payment-sale method.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

HILL *J.*, dissenting: I can not agree with the conclusion of the majority opinion that the 1929 fair market value of the building is not includible in petitioner's basis for computing gain or loss on the sale. In my view, the conclusion rests upon an incorrect interpretation of section 113 of the Revenue Act of 1938.

The majority conclude that the building is not a part of petitioner's cost basis because she did not pay for its construction. I think such a conclusion incorrectly narrows the scope of section 113 (a), for its effect is to restrict "cost" to payments for the acquisition or original construction of the asset. The proper test is, what is the taxpayer's original investment in the property? I think it is abundantly clear that such a test will properly include items which the majority view, if consistently applied, would exclude. Section 113 (b) (1) (A), unmentioned in the majority opinion, is designed to reflect the tax-

payer's final unrecovered investment in the property. The effect of these two provisions of the 1938 Act [1] is to constitute a positive mandate that the taxpayer's net investment in the asset disposed of is not to be taxed. The statute expressly recognizes that, if his books are correctly kept, the taxpayer's capital account with respect to the asset will reflect the amount of that investment.

Though it was by no means clear in 1929, it is now settled by *Helvering* v. *Bruun*, 309 U. S. 461, that petitioner realized taxable income when she reacquired the property in the amount of the then fair market value of the building. She did not report this income, but she realized it, even though the building was inseverably affixed to her original capital asset, the land. If such income had been received by her in the form of cash or separately disposable property which she converted into cash, and if the money were used to erect a building on the land, then there would be no question but that the amount would properly have been chargeable to petitioner's capital account in respect of the property. It would be conceded that her income had been invested therein and that the inclusion in basis is proper, and in my view this would be true whether or not the income had been taxed when it was received, for I can not find in either section 113 (a) or in section 113 (b) (1) (A) any basis for a conclusion that their application is dependent upon the taxpayer's compliance with income provisions of the statute.

The situation here is exactly the same as the end result there. The single factual distinction is that the inflexible form of petitioner's income eliminated her normal freedom of choice as to its disposition. She did not have the privilege of deciding whether to invest her income in a building, for it had already been dedicated to that purpose and the dedication could not be undone. The value of the building should, under the *Bruun* case, have been recorded on petitioner's books as income in 1929 and so reported on her income tax return for that year, but it can not be denied that the proper accounting practice would have been immediately to credit that same amount to her

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\*      \*      \*      \*      \*      \*      \*

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of property shall in all cases be made—

(A) for expenditures, receipts, losses, or other items, properly chargeable to capital account, including taxes and other carrying charges on unimproved and unproductive real property, but no such adjustment shall be made for taxes or other carrying charges for which deductions have been taken by the taxpayer in determining net income for the taxable year or prior taxable years.

\*      \*      \*      \*      \*      \*      \*

capital account as representing her income which was invested in her property.

In interpreting "cost" the majority have relied solely and squarely upon *Detroit Edison Co.* v. *Commissioner, supra.* In that case, however, and in each of the other cases cited by the majority, the courts went no further than to say that the meaning there ascribed to "cost" was *normally* correct and was correct as applied to the, facts then under consideration. But none of those cases presented the exact question which is here before us and which was raised in *Greenwood Packing Plant* v. *Commissioner,* 131 Fed. (2d) 787, and in *Crane* v. *Commissioner,* 68 Fed. (2d) 640. The *Detroit Edison* case is distinguishable on the fundamental ground that none of the taxpayer's income was invested in the improvements sought to be depreciated. This factual contrast becomes more vivid when it is noted that in all of these basis cases the ultimate object of the inquiry is to determine the taxpayer's net investment in the asset. *Detroit Edison Co.* v. *Commissioner, supra,* at page 103. But compare the situation in *Bueltermann* v. *United States,* 155 Fed. (2d) 597 (C. C. A., 8th Cir.). No addition to Detroit Edison's actual out-of-pocket cost was necessary, as it is to the cost of petitioner's land, to make the basis represent the owner's total investment in the property.

The majority, after determining that the building "cost" petitioner nothing, find it unnecessary to consider the significance of the fact that it represented taxable income to petitioner in 1929. Perhaps they do so because respondent, by his established practice, see article 22 (a)–13, Regulations 74, 86, 94, and 101, by concession on brief, and by implication in the explanatory letter accompanying the deficiency notice, makes it clear that petitioner's position would not have been challenged if she had reported such income on her 1929 tax return.

I think that such a distinction in result is demonstrably unsound, and that the majority opinion would have been further weakened if the decision were based even in part on petitioner's 1929 delinquency. But the administrative view does have the merit of preventing double taxation of a lessor's economic gain by virtue of repossession of the leased property. As I understand it, however, the reasoning of the majority opinion would require that the gain be taxed on disposition of the property by the lessor even though under the *Bruun* case it had been taxed at the time of repossession, for the "cost" of the property to the taxpayer would hardly be increased by the amount on which he is taxable simply because he has paid the tax. I do not believe that such an inequitable result was intended by Congress or is called for by the statute.

In case it may be said, however, that the decision here is justifiable on the facts because no inequity is done the petitioner, let us consider

the equitable argument which the respondent advanced but upon which the majority declined to reply.

The taxpayer's failure to report the value of the lessee's improvements as taxable income in the year of repossession was the basis for the decision of this identical question in *Crane* v. *Commissioner, supra*, decided also in favor of the Government by the First Circuit Court of Appeals six years prior to the *Bruun* decision. The premise is that petitioner's failure to report as income any value for the building was either a declaration that it had no value or an election to postpone realization of income therefrom until the property was sold, and the conclusion therefrom is that "a duty of consistency" prevents petitioner from now contending either that it then had a value or that income was realized by her prior to sale of the property in 1938.

The facts no more support a finding here of declaration of no value than in the very similar situation in *Helvering* v. *Salvage*, 297 U. S. 106, where the Supreme Court expressly approved the Second Circuit Court's rejection of that argument. In *Greenwood Packing Plant* v. *Commissioner, supra*, the Fourth Circuit Court of Appeals, in dealing with the exact fact situation here presented, pointed out that *Burnet* v. *Sanford & Brooks*, 282 U. S. 359, denies that either the taxpayer or the Commissioner has authority to elect the year for the taxing of economic gain and that in this situation the *Bruun* case fixes the year of taxability as the year of repossession of the property.

The court which decided the *Crane* case refused to apply its reasoning to very similar facts in *Countway* v. *Commissioner*, 127 Fed. (2d) 69, and in *Commissioner* v. *Saltonstall*, 124 Fed. (2d) 110, and opposite conclusions were reached in both cases. That same view was recently rejected by the Second Circuit also, after a penetrating analysis, in *Bennett* v. *Helvering*, 137 Fed. (2d) 537, and again in *McCullough* v. *Commissioner*, 153 Fed. (2d) 345, 347. The Seventh Circuit Court followed the *Saltonstall* case in affirming our decision, 125 Fed. (2d) 365, in *American Light & Traction Co.*, 42 B. T. A. 1121. *Helvering* v. *Williams*, 97 Fed. (2d) 810 (C. C. A., 8th Cir.), and *United States* v. *duPont*, 47 Fed. Supp. 894 (Dist. Ct., Dist. Del.), likewise repudiate the reasoning of the *Crane* case.

I view the "consistency" argument as simply an excuse for imposing a tax liability which actually has been precluded by the statute of limitations and which may not be asserted under section 3801 of the Internal Revenue Code. Construing the 1938 taxing act so as to reach income which indisputably should have been but may not now be taxed as of 1929 will not only establish a dangerous precedent, but here will undoubtedly cause the petitioner to bear a substantially greater tax liability than she would have had but for an apparently innocent error. So far as the equities are concerned, petitioner is no more re-

sponsible for the legal confusion which must be accepted as causing the 1929 error than is the Government. Cf. *Hewitt Realty Co.* v. *Commissioner*, 76 Fed. (2d) 880; *M. E. Blatt & Co.* v. *United States*, 305 U. S. 267, and see discussion in *Helvering* v. *Bruun*, *supra*, at page 465. In my opinion, the majority, resting solely upon a narrow interpretation of the word "cost," have in effect denied to petitioner the protection to which she is entitled under the statute of limitations.

VAN FOSSAN, *J.*, agrees with this dissent.

---

DISNEY, *J.*, dissenting: Though I agree with the dissent of Judge Hill, I wish, at the risk, perhaps, of repeating what may be inferrible from what he says, to add, as additional reasons for my dissent, the following: The petitioner, in the beginning, had a tract of real estate and necessarily some basis therein. That real estate was later improved with a building by the lessee, and in 1929 the petitioner received that building when she repossessed the property. Though she did not report as income the value of the building, we now know this should have been done, *Helvering* v. *Bruun*, 309 U. S. 461; and it appears altogether clear that proper bookkeeping methods required that if such value was included in income, an equal amount was chargeable to capital account. Section 113 (a), Internal Revenue Code, provides that the basis of property shall be the cost except as adjusted, and subsection (b) (1) provides for adjustment thereof "For * * * receipts * * * or other items properly chargeable to capital account * * *." In my view, the value of the building when received by petitioner in 1929 was chargeable to capital account, regardless of whether it was actually included in income and then charged to capital account, so that under the literal language of the statute petitioner's base in the property should be adjusted by the value of the building erected on the real estate and received by petitioner.

---

OPPER, *J.*, dissenting: The conclusion that petitioner could not increase her basis by the value of the forfeited improvements, which cost her nothing, seems to me to be correct. See *Helvering* v. *Gowran*, 302 U. S. 238. I can not agree, however, that consideration should not be given to the attorney fees incurred to recapture the property. Whether correctly decided or not, both *Mary E. Evans*, 42 B. T. A. 246, and *Estate of Austin C. Brant*, 44 B. T. A. 1306, dealt with the deductibility of such expenses where petitioner was being charged with income created by the repossession, as called for by *Helvering* v. *Bruun*, 309 U. S. 461. In the present case, of course, petitioner failed to return the income in the earlier year, but I have no doubt that, had she done

so, she would have created for herself a capital item with a corresponding basis. See *Ruth B. Rains*, 38 B. T. A. 1189. In that event, however, under the *Evans* and *Brant* cases, she could have offset the expenses. Since we are now taking cognizance of a failure to return the amount as income in the earlier year, by denying that result on the basis issue, I think it entirely consistent both with that approach and with the *Evans* and *Brant* cases to give petitioner the benefit of attorney fees which were a part of the cost to her of the property and which, by reason of her treatment of the entire transaction, she failed to deduct in the earlier year.