R. A. WALDREP AND RUBY WALDREP, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2765–67. Filed July 17, 1969.

*Maurice F. Bishop*, for the petitioners.
*Robert W. Goodman*, for the respondent.

#### OPINION

DAWSON, *Judge:* Respondent determined deficiencies of $395.54 and $30,068.40 in the petitioners' Federal income taxes for the years 1962 and 1963, respectively.

The first issue is whether petitioners sold the improvements on a 5-acre tract along with the land, resulting in a gain of $115,892.50, as reported by them, rather than a gain of $134,593.63, as determined by respondent. The second, and principal, issue is whether petitioners received 30 percent or less of the selling price in the year of sale, en-

titling them to report their gain on the installment method under section 453, I.R.C. 1954.[1] Certain issues have been conceded by both parties and will be given effect in the Rule 50 computation.

All of the facts have been stipulated and are hereby found accordingly. The stipulation of facts, supplemental stipulation, and attached exhibits are incorporated herein by this reference. The facts most pertinent to our decision are set forth below.

R. A. Waldrep and Ruby Waldrep (herein referred to as petitioners) are husband and wife who resided in Gainesville, Ga., at the time they filed their petition in this proceeding. Their joint Federal income tax returns for 1962 and 1963 were filed with the district director of internal revenue at Birmingham, Ala.

Prior to December 30, 1963, petitioners purchased two adjacent unimproved tracts of land in Birmingham, Ala., one tract consisting of approximately 5 acres and costing $55,000, and the other tract consisting of approximately 4.55 acres and costing $35,000. Petitioners erected on the 5-acre tract a building and other improvements costing a total of $56,989.26 for the purpose of carrying on an automobile auction business. Some of the improvements were made in 1963.

By December 30, 1963, the improvements on the 5-acre tract had been depreciated to $18,701.13 on Federal income tax returns filed by petitioners. No depreciation on the improvements was claimed by petitioners on their 1963 Federal income tax return.

The Exchange Security Bank of Birmingham, Ala., held a mortgage on the 5-acre tract and the 4.55-acre tract with an outstanding balance on December 30, 1963, of $25,283.67. Certain other mortgages were outstanding against the two tracts as of December 30, 1963, all of which were held by J. M. and Charlie Lucille Coffey (herein referred to as the Coffeys). The total balance owing on these mortgages on December 31, 1963, was $76,838.68.

On August 20, 1963, for a consideration of $2,500, petitioners granted an option to purchase the 5-acre tract "together with all improvements thereon" for $200,000 to John P. Carson and/or his assignees. The option provided that $55,000 of the purchase price be paid at the time of the exercise of the option, with the balance to be paid on or before January 6, 1964. The option further provided that "If the purchase option is exercised, sellers have the right, privilege and option to remove all buildings from said property within sixty (60) days after the closing of the purchase transaction."

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

The option was exercised on December 30, 1963, by Motels, Inc., as assignee of John P. Carson. In accordance with the terms of the option, $55,000 was paid on or by the closing date, December 30, 1963, as follows:

| | |
|---|---:|
| Consideration for option | $2,500.00 |
| Revenue stamps | 220.00 |
| Abstract | 101.00 |
| Real estate commission | 10,000.00 |
| Tax proration | 75.00 |
| Mortgage held by the Exchange Security Bank | 25,283.67 |
| Cash paid by check dated Dec. 30, 1963 | 16,819.73 |
| | ¹55,000.00 |

¹ This total should read $54,999.40, although it appears that the parties intended that an even $55,000 be paid on the closing date.

On December 30, 1963, the following additional transactions occurred: Charlie Lucille Coffey released petitioners as mortgagors of the 5-acre tract, reserving, however, her lien for $76,838.68 on the 4.55-acre tract (the mortgage release was filed of record in Jefferson County, Ala., on December 31, 1963); petitioners executed and delivered a warranty deed to the 5-acre tract to Motels, Inc., with only a single notation of an encumbrance, "Subject to taxes for the current year, a lien but not yet payable" (the deed was filed of record in Jefferson County, Ala., on December 31, 1963); Motels, Inc., executed a mortgage for $145,000 jointly to the petitioners and to the Coffeys (the mortgage was filed of record in Jefferson County, Ala., on December 31, 1963); Motels, Inc., executed two notes secured by the $145,000 mortgage, one payable to R. A. Waldrep in the amount of $68,161.32, and the other payable to the Coffeys in the amount of $76,838.68; R. A. Waldrep endorsed the note of Motels, Inc., to the Coffeys; Motels, Inc., agreed to pay the two secured notes on January 6, 1964, and Charlie Lucille Coffey agreed that contemporaneous with her receipt of the $76,838.68 on that date, she would lend $50,000 to R. A. Waldrep, evidenced by a promissory note secured by a mortgage on the 4.55-acre tract.

At the time of the closing on December 30, 1963, R. A. Waldrep informed representatives of Motels, Inc., that he had not then determined whether to remove the building from the 5-acre tract but that he desired to retain the right to do so and would notify Motels, Inc., of his decision prior to February 1, 1964. During a 6-week period in January or February 1964, petitioners removed, at a cost of $6,000,

the building and other improvements and placed them on the adjoining 4.55-acre tract which they still owned.

On January 6, 1964, Motels, Inc., paid petitioners $68,161.32 and paid the Coffeys $76,838.68, and on January 7, 1964, the purchase money mortgage in the amount of $145,000 was canceled of record in Jefferson County, Ala.

In the statutory notice of deficiency dated March 17, 1967, respondent gave the following explanation of his adjustments:

It is determined that during the year of sale, you received in excess of 30% of the selling price of property located on the Gadsden Highway in Roebuck and therefore you are not entitled to use the installment method of reporting gain from the sale. See NOTE hereinafter. Also, since the right to move the building and improvements located on the property was retained and exercised by you, the basis of the property was overstated in your return by the amount of $18,701.13, claimed as the undepreciated cost of the building and improvements. Accordingly, long-term capital gain includible in income is $67,296.82 rather than $15,935.22. Taxable income is increased $51,361.60 computed as follows:

| | |
|---|---:|
| Selling price | $200,000.00 |
| Basis (land) | 55,000.00 |
| Capital gain | 145,000.00 |
| Less: Selling expenses | 10,406.37 |
| Net long-term capital gain | 134,593.63 |
| Less: Long-term capital gain deduction | 67,296.81 |
| Taxable long-term capital gain, corrected | 67,296.82 |
| Taxable long-term capital gain per return | 15,935.22 |
| Increase | 51,361.60 |
| NOTE: Sales price | 200,000.00 |
| Payments received in taxable year ended December 31, 1963: | |
| Mortgages assumed by purchaser | 76,838.68 |
| Basis in property (land) | 55,000.00 |
| Excess of mortgages assumed by purchaser constitute payment in year of sale | 21,838.68 |
| Other payments received in year of sale | 55,000.00 |
| Total payments received in year of sale | 76,838.68 |

$76,838.68/$200.00=38.419% of sales.

As to the first issue, respondent contends that petitioners sold only the land to Motels, Inc., resulting in a gain to them on the transaction of $134,593.63. With respect to the second issue, he argues that peti-

tioners are not entitled to report the gain on the installment method [2] because they received over 30 percent of the selling price in the year of sale as a result of the operation of section 1.453–4(c), Income Tax Regs.,[3] which compels the inclusion of amounts of assumed mortgages in determining the "selling price" and the inclusion of the excess of the amount of the mortgages over the basis of the property sold in determining year of sale "payments."

Petitioners argue that they sold the improvements along with the land, subject only to a personal right reserved to themselves to remove before a certain time the improvements from the land. They further argue, upon the premise that Motels, Inc., did not take the property subject to, or assume, the mortgages held by the Coffeys, that the year of sale "payments" totaled $55,000, the cash paid by Motels, Inc., on the closing date, an amount less than 30 percent of the "selling price" of $200,000. They do not question the validity of section 1.453–4(c),

---

[2] SEC. 453. INSTALLMENT METHOD.

  (a) DEALERS IN PERSONAL PROPERTY.—

    (1) IN GENERAL.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan, may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

    (2) TOTAL CONTRACT PRICE.—For purposes of paragraph (1), the total contract price of all sales of personal property on the installment plan includes the amount of carrying charges or interest which is determined with respect to such sales and is added on the books of account of the seller to the established cash selling price of such property. This paragraph shall not apply with respect to sales of personal property under a revolving credit type plan or with respect to sales or other dispositions of property the income from which is, under subsection (b), returned on the basis and in the manner prescribed in paragraph (1).

  (b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY

    (1) GENERAL RULE.—Income from—

      (A) a sale or other disposition of real property, or

      (B) a casual sale or other casual disposition of personal property (other than property of a kind which would ordinarily be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1,000,

may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a).

    (2) LIMITATION.—Paragraph (1) shall apply—

      (A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953, (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition—

        (i) there are no payments, or

        (ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.

[3] Sec. 1.453–4 Sale of real property involving deferred periodic payments.

  (c) *Determination of "selling price."* In the sale of mortgaged property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser, shall, for the purpose of determining whether a sale is on the installment plan, be included as a part of the "selling price"; and for the purpose of determining the payments and the total contract price as those terms are used in section 453, and §§ 1.453–1 through 1.453–7, the amount of such mortgage shall be included only to the extent that it exceeds the basis of the property. * * *

Income Tax Regs. See *Burnet* v. *S. & L. Bldg. Corp.*, 288 U.S. 406 (1933).

Under Alabama property law, a fixture, which ordinarily is a part of the land, may, by agreement between the parties, be severed from the land and become a personal chattel. See, e.g., *Tolar* v. *Burkett*, 32 Ala. App. 434, 26 So. 2d 629, 631 (1946); *Roberts* v. *Caple*, 8 Ala. App. 444, 62 So. 343 (1913). It is not determinative, as between the parties, that the deed of conveyance of the land makes no reference to the fixtures. 5 Powell, Real Property, par. 653 (1968); *Roberts* v. *Caple, supra.* Therefore, we are first confronted with a purely factual determination, i.e., whether petitioners and Motels, Inc., intended that title to the building and other improvements pass, along with the title to the 5 acres, to Motels, Inc., on December 30, 1963.

After a careful review of all the evidence in this record, none of which is in dispute, we believe that the parties did not intend for the improvements to be a subject of the sale and that title to them did not, in fact, pass to Motels, Inc., at any time. By the terms of the option, petitioners reserved title as between the parties to the improvements by retaining effective control over them for at least 60 days after the closing date. Although petitioners did not exercise their right to remove the improvements until January 1964, it was clear from the outset that they would do so. Upon the exercise of their right, they were not required to rebate a portion of the original sales price or to furnish separate consideration. Petitioners have presented no evidence that the fair market value of the land alone was less than the $200,000 paid by Motels, Inc. Accordingly, we agree with respondent that petitioners' gain on the transaction should be measured by the difference between their basis in the land and the selling price, less the selling expenses, or $134,593.63.

The remaining issue is whether Motels, Inc., took the 5-acre tract subject to, or assumed, the mortgages in the total amount of $76,838.68, held by the Coffeys. The transferee of land assumes the mortgage of his transferor when he agrees, expressly or impliedly, to become personally liable for the amount of the underlying debt. 5 Tiffany, Real Property, sec. 1436 (3d ed. 1939); see also *Upchurch* v. *West*, 234 Ala. 604, 176 So. 186 (1937). In such case, the transferee agrees to indemnify the mortgagor to the extent of the value of the land and, if need be, from his own funds for any deficiency. 3 Powell, Real Property, par. 458 (1967).

An analysis of the evidence in this record indicates that the following legal relationships existed. Petitioners were personally liable to the Coffeys for $76,838.68, until January 6, 1964, as the promisors of notes

executed by them and as the endorsers of the note executed by Motels, Inc., on December 30, 1963. Motels, Inc., became personally liable to the Coffeys for $76,838.68, on December 30, 1963, as a result of the promissory note executed by it at that time. Both tracts of land, the 5-acre tract and the 4.55-acre tract, stood continuously as security for the $76,838.68 obligation until it was satisfied by payment by Motels, Inc., on January 6, 1964. Petitioners were mortgagors of the 4.55-acre tract for $76,838.68, continuously until January 6, 1964. Petitioners were mortgagors of the 5-acre tract for $76,838.68 until December 30, 1963, at which time Motels became mortgagor for the same amount until the debt was satisfied on January 6, 1964.

"[T]he intention to assume the mortgage may appear from a consideration of the entire instrument of conveyance even though it contains no formal promise, or it may be implied from all the facts and circumstances." 5 Tiffany, Real Property, *supra;* see also *Burns* v. *Austin,* 225 Ala. 421, 143 So. 824 (1932). In the series of transactions between the three parties on December 30, 1963, a personal liability running from Motels, Inc., to the Coffeys in the amount of $76,838.68, was established, secured by the mortgage executed by Motels, Inc., on the 5-acre tract. As between Motels, Inc., and petitioners, Motels, Inc., became primarily liable for the $76,838.68 obligation. See *Duke* v. *Kilpatrick,* 231 Ala. 51, 163 So. 640 (1935). We hold that this was tantamount to an assumption of petitioners' mortgages within the meaning of section 1.453–4(c), Income Tax Regs. In this context, we find no substantive distinction between a formal agreement to assume an existing mortgage and the creation of a new mortgage on the same property to secure a newly created personal liability of the transferee to the mortgage in the same amount.

Consequently, the excess ($21,838.68) of the amount of the mortgages assumed ($76,838.68) by Motels, Inc., over petitioners' basis ($55,000) in the property sold constitutes a year of sale payment for purposes of section 453. We have held with respect to the first issue that the 5-acre tract without improvements, petitioners' basis in which was $55,000, was the subject of the sale. The excess of $21,838.68, when added to the cash payments of $55,000 made on or before December 30, 1963, constitutes more than 30 percent of $200,000, the amount agreed to by both parties to this proceeding as the "selling price." Accordingly, petitioners are not entitled to report their gain from the sale of the 5-acre tract under the provisions of section 453.

In order to give effect to certain concessions made by both parties,

*Decision will be entered under Rule 50.*