WALTER KIRSCHENMANN AND ROHNA KIRSCHENMANN, ET AL.,[1] PETI-
TIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4901–69, 4914–69—4916–69, 4928–69. Filed January 26, 1972.

*Curtis Darling* and *Bruce Maclin,* for the petitioners.
*Richard L. Bacon, Robert H. Feldman,* and *Stephen B. Zorick, Jr.,*
for the respondent.

OPINION

FEATHERSTON, *Judge:* Respondent determined deficiencies and over-
assessments in petitioners' Federal income tax as follows:

| Docket No. | Year | Deficiency | Overassessment |
|---|---|---|---|
| 4901–69 | [1] 1966 | $8, 959. 00 | |
|  | [1] 1967 | | $181. 00 |
| 4914–69 | 1965 | 11, 935. 34 | |
|  | 1966 | | 317. 55 |
| 4915–69 | 1965 | 2, 315. 00 | |
|  | 1966 | | 1, 151. 00 |
| 4916–69 | 1965 | 4, 343. 26 | |
|  | 1966 | | 96. 86 |
| 4928–69 | 1965 | 12, 343. 55 | |
|  | 1966 | | 120. 21 |

[1] In this docket, the fiscal year of petitioners Walter Kirschenmann and Rohna Kirschenmann ended Mar. 31, 1966, and Mar. 31, 1967.

The issues for decision are as follows:

(1) Whether, for the purpose of determining a seller's qualifica-
tions for the installment sale provisions of section 453,[2] the amount
by which an assumed mortgage exceeds the seller's basis must be
included in the payments received in the year of sale; and

(2) Whether, for purposes of determining petitioners' qualifica-
tions for the installment sale provisions of section 453, the seller's
selling costs must be offset against gross profit or may be added to
the seller's basis.

[1] The proceedings of the following petitioners are consolidated herewith : Edwin Preszler and Lenora Preszler, docket No. 4914–69; Estate of Bertha Kirschenmann, Deceased, Adolf Kirschenmann, Trustee, docket No. 4915–69; Adolf Kirschenmann and Anna Kirschenmann, docket No. 4916–69; and O. D. Handel Trust, Walter Kirschenmann, and Adolf Kirschenmann, Trustees, docket No. 4928–69.

[2] All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, unless otherwise noted.

All the petitioners in these proceedings were legal residents of California at the time they filed their respective petitions. They timely filed their Federal income tax returns for each of the years in controversy with the district director of internal revenue, Los Angeles, Calif.

Adolf and Bertha Kirschenmann were the parents of Walter Kirschenmann, Lenora Preszler, and Ruth Handel. (For convenience these persons will usually be referred to by their first names.) In 1957, Ruth and Otto Handel, as grantors, created the O. D. Handel Trust for the benefit of their children, Dennis Handel and Janice Handel Vanatta. Bertha died in 1959, and Adolf was named trustee of her estate. Adolf subsequently remarried.

The facts, all stipulated, show that in 1964 A–K Associates (hereinafter A–K), a family partnership, was organized under the laws of California. Its principal business involved rental properties. During the period in issue, Walter, Edwin Preszler, and the O. D. Handel Trust each owned a 25-percent interest in A–K, and Adolf and the Estate of Bertha Kirschenmann each owned a 12.5-percent interest therein.

In 1965, A–K sold a farm in Cuyama, Calif., for a total price of $432,000. The farm was a capital asset in the hands of the partnership, and the gain realized from the sale qualified as long-term capital gain. Neither A–K nor any of its partners was a dealer with respect to the real estate in issue.

A–K's original cost in the property was $304,552.22; depreciation had been claimed in the amount of $206,042.86, leaving an adjusted basis of $98,509.36. A–K's selling expenses in connection with the sale amounted to $23,378.42. At the time of the sale, the farm was encumbered by a mortgage in the amount of $160,000; this mortgage was assumed by the buyers as part of the purchase price. In addition, A–K received cash in the year of sale in the amount of $80,011.54. The balance of the purchase price was represented by a note in the amount of $191,988.46 secured by the property and payable with interest over a period of years.

A–K elected to report its gain from the sale of the farm in its partnership return for 1965 under the installment method provided by section 453. In computing its gain from the sale, A–K added its selling expenses to its depreciated basis in the property to arrive at a total adjusted basis of $121,887.78 and subtracted this amount from the total price of $432,000 to calculate its total gain from the sale at $310,112.22. The partnership treated the total contract price as equal the total amount of gain realized, arriving at a gross profit ratio of 100 percent. In making this computation, A–K treated the total contract price as $310,112.22, consisting of the cash ($80,011.54), the note executed by the buyers and secured by the property ($191,988.46),

and the excess of the mortgage over the partnership's basis in the property ($38,112.22). The partnership calculated the amount of such excess by adding its selling expenses ($23,378.42) to its adjusted basis ($98,509.36) in the property and subtracting both sums from the amount of the mortgage ($160,000).

The partnership reported the sum of $118,123.76 as payments received in the year of sale. This sum consisted of the cash in the amount of $80,011.54 received in the year of sale plus $38,112.22 shown as the excess of the mortgage over the partnership's basis in the property. Thirty percent of the total selling price was $129,600.

The individual partners included in their own returns for 1965 their respective shares of the gain of $118,123.76, treating the remainder of the gain as reportable in subsequent years pursuant to the installment method provided by section 453.

Respondent determined that the sale by A–K did not qualify for reporting under the installment method and that the entire realized gain in the amount of $310,112 was taxable to the partners in 1965 in proportion to their interests in the partnership. Respondent further determined that the partnership's selling expenses were not proper additions to its adjusted basis in the property for purposes of determining whether the mortgage assumed by the buyer exceeded the partnership's basis in the property. Respondent determined that the mortgage exceeded the partnership's adjusted basis by $61,490.64 ($160,000 less $98,509.36) and that, when such excess amount is added to the cash received ($80,011.54), the partnership realized in the year of sale more than 30 percent of the selling price of the property. Each partner's distributive share of total partnership capital gain was determined to be his respective share of the entire gain realized from the sale.

Section 453 [3] authorizes a seller of real property to report his gain

---

[3] SEC. 453. INSTALLMENT METHOD.

  (a) DEALERS IN PERSONAL PROPERTY.—

    (1) IN GENERAL.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

    \*       \*       \*       \*       \*       \*

  (b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY.—

    (1) GENERAL RULE.—Income from—

      (A) a sale or other disposition of real property, \* \* \*

    \*       \*       \*       \*       \*       \*       \*

may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a).

    (2) LIMITATION.—Paragraph (1) shall apply—

      (A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition—

        (i) there are no payments, or

        (ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.

on an installment basis. Under subsection (a), he must return as income from the sale the "proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price." But under subsection (b) the use of the installment method is permitted "only if in the taxable year of the sale * * * the payments * * * do not exceed 30 percent of the selling price."

Section 1.453–4(c), Income Tax Regs.,[4] prescribes rules for the use of the installment method in real estate transactions involving the assumption by the purchaser of an existing mortgage on the property. It provides that in the sale of mortgaged property "the amount of the mortgage * * * shall, for the purpose of determining whether a sale is on the installment plan, be included as a part of the 'selling price.' " The regulation further provides that "for the purpose of determining the payments and the total contract price as those terms are used in section 453 * * * the amount of such mortgage shall be included only to the extent that it exceeds the basis of the property."

Petitioners do not challenge the correctness of respondent's determination that this regulation requires the amount of the assumed mortgage in excess of the basis to be taxed as a payment in the year of the sale. Indeed, they recognized this rule in preparing their returns. However, they contend that when this regulation is so applied as to prevent a taxpayer from using the installment method, the regulation "is invalid as being in derogation of legislative intent and as being legislative in character." They maintain that for the purpose of qualifying for use of the installment method, year-of-sale payments should include only cash or valuable property other than cash which can be used to pay the tax.

In weighing petitioners' argument, we are mindful that section 453 contains no provisions on the installment sale of real estate encumbered by liens. To deal with the many complications not readily foreseeable in such situations, Congress conferred upon the Secretary or his delegate "wide discretion in respect of details" by specifically authorizing him to prescribe regulations to govern the application of the section. *Burnet* v. *S. & L. Bldg. Corp.*, 288 U.S. 406, 414 (1933). In reviewing the validity of such regulations, the "role of the judiciary

---

[4] Sec. 1.453–4 (c), Income Tax Regs., is, in part, as follows:

*Determination of "selling price".* In the sale of mortgaged property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser, shall, for the purpose of determining whether a sale is on the installment plan, be included as a part of the "selling price"; and for the purpose of determining the payments and the total contract price as those terms are used in section 453 * * * the amount of such mortgage shall be included only to the extent that it exceeds the basis of the property. * * *

in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." *United States* v. *Correll*, 389 U.S. 299, 307 (1967). The regulation "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Commissioner* v. *South Texas Co.*, 333 U.S. 496, 501 (1948).

We think it relevant that the provisions of section 453 have been repeatedly reenacted since the language of section 1.453-4(c) of the regulations, on which petitioners concentrate their attack, was first adopted in 1926. See *Helvering* v. *Reynolds Co.*, 306 U.S. 110, 114–115 (1939). Insofar as that language involves the formula for determining the proportionate part of the gain that is taxable each year, its validity has been sustained by the Supreme Court in *Burnet* v. *S. & L. Bldg. Corp.*, *supra*, as a reasonable exercise of rulemaking power. An earlier version of the language weathered an attack on its validity as it related to the payments received in the year of the sale in *Lucas* v. *Schneider*, 47 F. 2d 1006, 1008 (C.A. 6, 1931), certiorari denied 284 U.S. 622 (1931), where the court stated that its effect "was to reflect more clearly the real meaning of the statute." Moreover, this Court has repeatedly assumed the validity of the disputed mortgage payment language of the regulation in testing the right of taxpayers to employ the installment method. See, e.g., *R. A. Waldrep*, 52 T.C. 640, 644–646 (1969), affirmed per curiam 428 F. 2d 1216 (C.A. 5, 1970) ; *Floyd R. Clodfelter*, 48 T.C. 694 (1967), affd. 426 F. 2d 1391, 1395 (C.A. 9, 1970) ; *Stonecrest Corporation*, 24 T.C. 659, 665–668 (1955) ; *Therese C. Johnson*, 7 T.C. 465, 474–475 (1946), affirmed in part, reversed and remanded on other grounds 162 F. 2d 844 (C.A. 5, 1947) ; *Metropolitan Properties Corporation*, 24 B.T.A. 220 (1931), acq. XI–1 C.B. 5.

Even without regard to this long history, however, we think the regulation is a reasonable one. It gives the same meaning to the term "payments" throughout section 453—in section 453(a), which defines the portion of the installment payments to be returned annually, as well as section 453(b)(2), which provides that the year-of-sale payments may not exceed 30 percent of the selling price if the installment method is to be used. Petitioners' argument, in contrast, would assign different meanings to "payments" as used in the several paragraphs of the section. In our view, nothing in the language of the section or its history justifies such treatment.

Finally, we believe requiring the amount of the assumed mortgage in excess of the basis to be treated as a part of the year-of-sale payments is a reasonable measure for the protection of the integrity of the 30-percent statutory requirement. Without this provision, that requirement could easily be evaded by the simple process of the seller's placing

a mortgage on the property immediately prior to the sale, receiving the cash as loan proceeds, and then having the purchaser assume the mortgage. We think the regulation is a valid one.

Petitioners' second argument is that their selling expenses ($23,378.42) should be added to their adjusted basis for the property. If this is done, the basis will be increased sufficiently to allow them to use the installment method, since the excess of the assumed mortgage over the basis plus the other payments in the year of sale would not exceed 30 percent of the selling price.

Section 1.453–1(b)(1), Income Tax Regs.,[5] in part, defines the term "gross profit," as that term is used in the installment sale provisions, as "the selling price less the adjusted basis as defined in section 1011 and the regulations thereunder." Section 1011(a) provides that "The adjusted basis for determining the gain or loss from the sale or other disposition of property * * * shall be the basis [cost] * * * adjusted as provided in section 1016." Section 1016(a) provides, in part, that "Proper adjustment in respect of the property shall in all cases be made—(1) for expenditures * * * properly chargeable to capital account * * *." Petitioners argue that the selling expenses are "properly chargeable to capital account" under section 1016 and, consequently, are a proper item to be included in "adjusted basis" within the meaning of section 1011 and, ultimately, section 1.453–1 (b)(1), *supra*. We cannot agree with petitioners' position.

The law is well settled that, in the case of taxpayers who are not dealers in real estate, selling expenses are not items "properly chargeable to capital account," but rather are expenditures "made in connection with the sale of a capital asset." *Dwight A. Ward*, 20 T.C. 332, 342 (1953), affd. 224 F. 2d 547 (C.A. 9, 1955), acq. 1956–1 C.B. 6. As such, these expenses are properly allowable as an offset against the gross profit from the sale; they are not an adjustment to basis under section 1016 as a capital item. *Florence G. Baldwin*, 23 B.T.A. 512 (1931), acq. XI–1 C.B. 1; *Samuel C. Chapin*, 12 T.C. 235, 238–239 (1949), affd. 180 F. 2d 140 (C.A. 8, 1950).

Section 1.453–1(b)(1) of the regulations further provides that "Gross profit * * * is reduced by commissions and other selling

---

[5] Sec. 1.453–1  Installment method of reporting income.

(b) *Income to be reported.* (1) Persons permitted to use the installment method of accounting prescribed in section 453 may return as income from installment sales in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when the property is paid for bears to the total contract price. * * * In the case of sales of real estate and casual sales of personal property, gross profit means the selling price less the adjusted basis as defined in section 1011 and the regulations thereunder. Gross profit, in the case of a sale of real estate by a person other than a dealer and a casual sale of personal property, is reduced by commissions and other selling expenses for purposes of determining the proportion of installment payments returnable as income. * * *

expenses for purposes of determining the proportion of installment payments returnable as income." The effect of treating the selling expenses in this manner is to spread the reduction of income for the expenses over all the years during which payments are made. This approach, rather than the one advocated by petitioners (i.e., to allow an entire deduction for selling expenses in the year of sale), is consistent with the "offset" nature of selling expenses.

In addition, under the predecessor of section 453, the Board of Tax Appeals was presented with the issue of whether certain selling expenses should be applied as a reduction of the payments in the year of sale, or spread over the period during which additional payments on the property were to be made. In sustaining the validity of the regulations, which have the effect of spreading the deduction of selling expenses over the period payments are made to the buyer in the same manner as the present regulations, the Board in *Mrs. E. A. Giffin*, 19 B.T.A. 1243, 1246 (1930), stated:

> The effect of this method of computation is that in cases where the taxpayer elects to project the profit realized into years beyond that in which the sale is made, the expenses incident to the sale are taken into account over the same period of time. This seems to us to be the result intended by the law * * *.

We hold section 1.453–1(b)(1) of the regulations, to the extent that it provides for the deduction of selling expenses from gross profit rather than adding them to the basis in the property, is valid and in keeping with the legislative intent of the provisions of section 453.

We are compelled to conclude that petitioners are not entitled under section 453 to use the installment method of reporting their gain from A–K's sale of the farm, because in the year of the sale they received payments in excess of 30 percent of the selling price.

*Decisions will be entered for the respondent.*