W. H. Batcheller, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 33112.   Promulgated May 23, 1930.

*Jesse I. Miller, Esq.,* for the petitioner.
*J. E. Marshall, Esq.,* and *C. A. Ray, Esq.,* for the respondent.

OPINION.

McMahon: The respondent concedes error in his denial of a deduction of $592 representing ordinary and necessary business expenses for the year 1924. This deduction will, therefore, be allowed.

The only other error alleged in the petition is that the respondent refused to compute the profit upon the sale to Lett upon the installment sale basis provided in section 212 (d) of the Revenue Act of 1926.

The respondent treated the transaction as closed in the year 1924 and determined that the entire profit upon the sale was realized in 1924. He held that the fair market value of the notes at the time they were received by the petitioner equaled their face value of $23,953.50. The evidence offered and the brief submitted by the petitioner are directed to the fair market value of these notes when received from Lett in 1924. The petitioner contends, as stated in his brief, " that the mortgage notes above mentioned in the amount of $23,953.50 were income to the taxpayer in the year 1924 only to the extent of $10,000 * * *." No argument is presented in the petitioner's brief as to the question of whether the respondent erred in failing to treat the sale as an installment sale, but petitioner does not specifically abandon this assignment of error and we shall, therefore, dispose of it as presented.

Section 212 of the Revenue Act of 1926 provides, in part:

Sec. 212. (d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of * * * property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when

the payment is completed, bears to the total contract price. In the case * * * (2) of a sale or disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

Section 1208 of the Revenue Act of 1926 provides:

The provisions of subdivision (d) of section 212 shall be retroactively applied in computing income under the provisions of * * * the Revenue Act of 1924 * * *.

We have found that the consideration for the sale was made up of notes of Lett in the total amount of $23,953.50, and the cancellation of notes of the petitioner totaling $8,200, plus cancellation of an interest debt in the amount of $246.50, a total consideration of $32,400.

In *Jacob M. Dickinson, Jr., et al., Executors*, 18 B. T. A. 790, we held that when property was sold in 1919 with title passing to the purchaser, and was reacquired by purchase at a trustees' sale in 1923, the sale and repurchase were separate transactions. In the instant proceeding, by analogy, the petitioner's purchase of property in 1922, and his sale of such property back to the vendor in 1924, must be considered as separate transactions.

In *S. J. Schneider, Trustee of the Estate of Bagby-Howe Drug Co.* v. *Lucas*, decided by the United States District Court, Western District of Kentucky, August 3, 1929, unreported (C. C. H. [1929] p. 8769), it was held that where a vendee assumes and pays a mortgage note in the year in which he purchases property, the amount so paid must be considered in determining the amount of the "initial payment" received by a vendor attempting to report his profit from the transaction on the installment sale basis.

The court said:

* * * It is true that the $90,000 mortgage and the $2,000 mortgage which the purchaser agreed to pay were not paid to the seller. Nevertheless, the benefit flowing to the taxpayer from the payment of these mortgages by the purchaser was property, and just as much a part of the consideration as cash which was paid as a part of the purchase price. I do not think, however, that this benefit can be said to have been received by the seller unless and until the mortgages were paid according to their tenor. The purchaser simply agreed that he would pay the mortgage according to their terms. * * * As he made each of these respective payments it became property passing to the seller at the time such payments were made by the purchaser and subject to taxation for that year.

*A fortiori*, when, as in this case, the vendee, as part consideration for the property, cancels the vendor's prior indebtedness to him,

the amount of the indebtedness so canceled is income to the vendor and is the equivalent of cash. From this it follows that the petitioner received an initial payment of $8,200, plus $246.50, a total of $8,446.50 upon the sale in 1924. The said initial payment equals slightly more than 26 per cent of the purchase price and, therefore, the respondent's refusal to regard the transaction as an installment sale was correct.

In support of his assertion that the fair market value of the notes he received from Lett was not in excess of $10,000 when such notes were received, the petitioner has offered the testimony of Osgood F. Barnes as an expert witness on the value of such notes. Barnes testified that he had lived in Miami since 1920, and that he was engaged in the construction and retail merchandise business until 1924, since which time he has been engaged as a real estate and business broker. In 1924, while still engaged in the retail merchandise business, he began to operate as a real estate broker, most of his operations in this line relating to property in the Buena Vista region of Miami. He further testified to changes in the real estate market resulting in the " boom " of 1925. It appears that this witness sold one or two mortgages in 1924. He was acquainted with the property involved in this proceeding and with J. C. Lett, who purchased it, and, he thought, with the financial condition of Lett when the purchase was made. The witness stated that he knew from personal dealings that Lett was without cash resources in 1924 but was of opinion that he owned some property " free and clear." The witness testified, on direct examination:

Q. Don't you know Mr. Lett gave Mr. Batcheller notes aggregating between $23,000 and $24,000 on this property?

A. I don't know the exact figures. I know the deal was made.

Q. Assuming that Mr. Lett did give Mr. Batcheller notes in 1924 aggregating between $23,000 and $24,000 on this property which notes were secured by first mortgage on said property, what in your opinion would have been the market value of this note or notes without recourse?

A. Well, in my opinion, according to my knowledge of affairs not over fifty per cent of said amount. I will say that first mortgage on the property at that time could have been sold for not much over $10,000. I would not think so.

Q. Is it your opinion that it could have been sold without recourse for about $10,000?

A. I think it could have been sold for that amount; that is my opinion.

The testimony quoted is the only direct expression in the evidence of the market value of the notes received by the petitioner in 1924.

There is not sufficient evidence in the record upon which we can base a value upon these mortgage notes given by Lett to the petitioner. The witness, Barnes, handled one or two mortgages in 1924. It has not been shown that he ever handled others. The similarity between the mortgages which he handled and those involved in this proceeding has not been established. We find nothing in this witness' career,

as further detailed, which recommends his judgment of the value of the notes involved strongly enough to lead us to accept it as against the *prima facie* correctness of the respondent's determination. The conclusions of the witness are not binding upon the Board. *Pittsburgh Hotels Co.*, 15 B. T. A. 587. See also *James A. Bradley*, 4 B. T. A. 1179.

When the petitioner challenged the respondent's determination of the value of the notes, he assumed the burden of proving not only that the respondent's determination of value was incorrect, but also what the correct value was, in fact. *Helen Pitts Parker et al*, 14 B. T. A. 1185. See also *Duquesne Steel Foundry Co.*, 15 B. T. A. 467.

The Board is well aware of the fact that Florida experienced a great real estate boom during 1924 and 1925; that many transactions were mere paper ones and that much of the paper was worth far less than its face value. In *Georgia-Florida Land Co.*, 16 B. T. A. 1253, 1258, we said:

In order to arrive at a fair determination in the issue here presented for consideration, the Board must take brief notice of the situation as it then existed in regard to Florida real estate. If not unique, it was almost unprecedented, and the wild speculation in real estate prices was altogether without regard to actual values. It was closely allied to that which has taken place, and still takes place from time to time, in oil and gas territory, with this difference, that in the latter case there is always the possibility that the unexplored earth actually contains vast realizable, though unseen and unknown, wealth; while in the case of Florida, the speculator's only hope was that he might speedily find some one to take the property off his hands at a material profit. The business was transacted largely " in paper " of irresponsible makers, * * *.

However, it is necessary that a petitioner attacking the respondent's determination of the value of " paper " received in " boom " transactions must establish the actual fair market value of such " paper " in order that we may afford him relief. The petitioner has not sustained the burden in this respect and we must, therefore, approve the respondent's determination.

*Judgment will be entered under Rule 50.*