THE STONECREST CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE BROOKFIELD CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 42445, 42446. Filed July 14, 1955.

*Bert F. Rabinowitz, Esq.,* and *Scott H. Dunham, C. P. A.,* for the petitioners.

*T. M. Mather, Esq.,* for the respondent.

OPINION.

TIETJENS, *Judge:* Where property is sold on the installment plan the seller may return as income from the sale in any taxable year the proportion of the installment payments actually received in that year which the gross profit on the sale bears to the total contract price. Sec. 44, I. R. C. 1939.[1]  This provision, enacted in the Revenue Act

---

[1] SEC. 44. INSTALLMENT BASIS.

(a) DEALERS IN PERSONAL PROPERTY.—Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price.

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY.—In the case * * * of a sale or other disposition of real property, if * * * the initial payments do not exceed 30 per centum of the selling price * * *, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section.  As used in this section the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

of 1926,[2] relieved a seller from having to pay an income tax in the year of sale based on the full amount of anticipated profits when in fact only a small portion of the sales price had been received. *Commissioner* v. *South Texas Lumber Co.*, 333 U. S. 496 (1948). It permitted him to distribute the profit on an installment sale over the years during which the purchase money would be actually received, by dividing the payments into parts representing a return of capital and profit. In the case of real property sold on the installment plan where there was a mortgage on the property which the buyer either assumed or took the property subject to, the statutory scheme of returning a portion of each payment as income in the year received did not reach all of the seller's profit, since the total amount of the selling price was not paid over by the buyer to the seller; that portion of the selling price represented by the mortgage was paid by the buyer directly to the mortgagee. To remedy this, regulations were issued by the Commissioner and approved by the Secretary of the Treasury to provide that the amount of the mortgage, to the extent that it did not exceed the seller's basis in the property sold, was not to be considered a part of the "initial payments" or of the "total contract price." Treasury Regulations 69, article 44, promulgated August 28, 1926; amended by Treasury Decision 4255, VIII-1 C. B. 165 (1929). The reduction in the total contract price had the effect of increasing the percentage of each installment payment to be returned as income, thereby reaching the entire profit on the sale. The amount by which the mortgage exceeded the seller's basis in the property was treated as a part of the initial payments and was added to the seller's basis in computing total contract price. The regulation was upheld in a case involving the sale of mortgaged property where the buyer unequivocally "assumed" the mortgage, as a fair attempt to carry out the intent of Congress. *Burnet* v. *S. & L. Bldg. Corp.*, 288 U. S. 406 (1933).

The wording of the regulation, insofar as it relates to the question here, is as follows:

Regulations 111:

SEC. 29.44-2. SALE OF REAL PROPERTY INVOLVING DEFERRED PAYMENTS.—* * *
*     *     *     *     *     *     *
In the sale of mortgaged property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser, shall be included as a part of the "selling price," but the amount of the mortgage, to the extent it does not exceed the basis to the vendor of the property sold, shall not be considered as a part of the "initial payments" or of the "total contract price," as those terms are used in section 44, in sections 29.44-1 and 29.44-3, and in this section.

---

[2] Sec. 212 (d), 44 Stat. 23.

The above form of the regulation is the same as that approved by the Supreme Court in *Burnet* v. *S. & L. Bldg. Corp.*, *supra*.

In determining the deficiencies here involved the respondent followed the procedure described in our Findings of Fact and applied the regulation to the sales made by petitioners, claiming that according to the terms of the agreement of sale a buyer, in effect, assumed the mortgage obligation, or at least that the property was taken subject to the mortgage.

Whether respondent has properly determined the amount of reportable income received by petitioners turns on whether a buyer from petitioners either assumed the mortgage on the property or took the property subject to the mortgage within the meaning of the regulation.

While the regulation first refers broadly to "the sale of mortgaged property," the language following this broad reference describes the two types of sales of mortgaged property to which the regulation applies: (a) Where a buyer takes property subject to mortgage, or (b) assumes the mortgage. These expressions we take to have the meaning customarily attributed to them in transactions concerned with the transfer of mortgaged property. *Crane* v. *Commissioner*, 331 U. S. 1, 6 (1947). Taking property subject to a mortgage means that the buyer pays the seller for the latter's redemption interest, i. e., the difference between the amount of the mortgage debt and the total amount for which the property is being sold, but the buyer does not assume a personal obligation to pay the mortgage debt. The buyer agrees that as between him and the seller, the latter has no obligation to satisfy the mortgage debt, and that the debt is to be satisfied out of the property. Although he is not obliged to, the buyer will ordinarily make the payments on the mortgage debt in order to protect his interest in the property. Where a buyer assumes a mortgage on property, he pays the seller for the latter's redemption interest, and in addition promises the seller to pay off the mortgage debt. This promise of the buyer can ordinarily be enforced by the mortgagee. 5 Tiffany, The Law of Real Property, secs. 1435, 1436 (3d ed. 1939) ; IV American Law of Property, secs. 16.125, 16.127, 16.128–16.132 (1952).

The typical agreement of sale used by petitioners, as set out fully in our Findings of Fact, first specified the purchase price of the property and then provided the manner of payment: A downpayment of $100, monthly payments of $47.40 for 27 months (first period), and then of $33.50 until the purchase price and interest were paid in full (second period). Mention is then made of a deed of trust (mortgage) conveying the property to trustees to secure payment of a promissory note executed by the seller. The agreement states that the installment payments include interest and charges at the same rate and as provided in the promissory note secured by the deed of trust, and the seller is

required to apply the installment payments to the loan and to the rest of the purchase price and interest thereon. Provision is then made that the seller shall deliver and the buyer accept conveyance of the property within 5 years (8 and 12 years in some agreements) after the first period installment payments have been made. The option is given to the buyer to determine when in the 5- (sometimes 8- and 12-) year period the conveyance will be made. In some agreements an option is given to the buyer to require conveyance of the property within a period of years after the agreement date. Upon conveyance the buyer is to assume payment of the promissory note secured by the deed of trust. After assumption the buyer's payments on the purchase price were to be the monthly payments required by the promissory note, but in the event the seller could not obtain a release from its obligation on the promissory note from the lending bank, the seller could withhold conveyance of the property until a release of its liability was obtained, or could make the conveyance at any time sooner.

The foregoing provisions of the agreement make it clear that there was no assumption of the mortgage when a property was sold by petitioners. As is clearly stated, the buyer agreed to assume the mortgage upon conveyance of the property by the seller at some time from 5 to 12 years after the first period installments had been made. The regulation has no application until there is an actual assumption. The fact that the seller was to use the installment payments to pay off the mortgage debt does not constitute an assumption of the mortgage by the buyer. As we have pointed out, assumption of a mortgage means that the buyer takes over the seller's obligation to the mortgagee and incurs an obligation generally enforceable by the mortgagee. Here, as the parties have stipulated, the buyer was under no present obligation to the mortgagee.

Nor was any sale made by petitioner "subject to" a mortgage in the ordinary usage of that expression. The expression means that the buyer has no personal obligation to pay the mortgage debt; that, as between seller and buyer, the seller has no obligation to pay the debt; and that the debt is to be satisfied from the property. Here there was no understanding that the debt was to be satisfied out of the property; instead it was explicitly provided in the agreement of the parties that the seller was to make the payments on the mortgage debt until there was a conveyance of the property. It has been stated that in determining whether or not a transfer is subject to a mortgage,

A circumstance which is usually of controlling importance in this regard is whether the mortgage was considered in adjusting the purchase price. If the price was reduced by reason of the mortgage, it is a reasonable conclusion that it was intended that the debt, either in whole or in part, should be imposed on the land in the hands of the transferee rather than on the tranferor, while if

the full agreed value of the land was paid, it may be concluded that the parties intended the grantor to pay the mortgage debt out of the proceeds of the sale. [Tiffany, sec. 1435, p. 365.]

In this case there was no reduction in selling price because of the mortgage and it seems clear that the seller was intended to pay the mortgage debt out of the proceeds of the sale. By his interpretation respondent would extend the application of the regulation to every sale of property that has a mortgage on it. While in a sense every sale of mortgaged property is subject to a mortgage since the property remains liable to have the mortgage debt satisfied from it, we think the expression was used in the regulation in its customary meaning, to define the obligations of the parties to a sale of property with respect to the mortgage debt. See Tiffany, *supra*, sec. 1435.

The position taken by respondent here appears contrary to G. C. M. 3048, VII–1 C. B. 60 (1928), where it was ruled that the regulation in question was inapplicable. The form of the regulation there involved contained language identical to that before us (viz, "In the sale of mortgaged property * * *, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser"). The situation dealt with in the ruling was one where real estate against which there was a "reducing mortgage" was sold on installments. The purchaser did not assume the mortgage but made monthly payments to the vendor who in turn made the mortgage payments, similarly to the case here. It was held that the rule prescribed in the regulations for the determination of the percentage of profit returnable each year in the case of mortgaged property sold on the installment plan was inapplicable.

The cases relied on by respondent—*Burnet* v. *S. & L. Bldg. Corp.*, *supra; Dalriada Realty Co., Inc.*, 5 B. T. A. 905; *Pacheco Creek Orchard Co.*, 12 B. T. A. 1358; *Katherine H. Watson*, 20 B. T. A. 270; and *Fifty-Three West Seventy-Second Street, Inc.*, 23 B. T. A. 164—are distinguishable. In all of those cases, with the exception of *Pacheco Creek Orchard Co.*, the mortgage was assumed by the vendee. In the *Pacheco* case payment of the mortgage was made by the vendee to the mortgagee and it was held that while the mortgage was not "assumed," the property was "purchased subject to the mortgage," and the regulation applied.

In summary, we think that the type of transaction entered into by petitioner with a purchaser is apparent from the face of the agreement of sale. It was an agreement by the parties that the purchaser was to make payments on the purchase price for a period of time, after which petitioner was to pass title to the property and the purchaser was to take over the remaining mortgage payments. There was no present assumption of the mortgage nor was the property taken subject to the mortgage, as those expressions are customarily used. Re-

spondent therefore erred in subtracting the amount of the mortgage from the total contract price in determining the percentage of income from installment sales to be returned by petitioners during the taxable years in question, and also erred in including the excess of the mortage over the seller's basis in initial payments.

In the event we decide this issue for petitioners, which we do, the parties have stipulated the figures to be used in determining how much installment income should be reported in the taxable years.

In view of other concessions,

*Decisions will be entered under Rule 50.*