DAVID C. MADDOX AND DOROTHY S. MADDOX, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6215–76.    Filed March 2, 1978.

*Jon C. Feder*, for the petitioners.
*David Roth*, for the respondent.

## OPINION

STERRETT, *Judge:* Respondent determined deficiencies in petitioners' Federal income taxes for the calendar years 1972 and 1973 in the amounts of $14,000 and $20,714, respectively. Due to concessions[1] by the parties the sole remaining issue for decision is whether petitioners received 30 percent or less of the selling prices in the year of sale of several parcels of real property, entitling them to report their gains on the installment method under section 453, I.R.C. 1954.[2]

---

[1] The parties have agreed to adjustments decreasing petitioners' taxable income for the 1972 taxable year in the amount of $6,396 and increasing their taxable income for the 1973 taxable year in the amount of $17,046.

[2] SEC. 453. INSTALLMENT METHOD.

(a) DEALERS IN PERSONAL PROPERTY.—

(1) IN GENERAL.—Under regulations prescribed by the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

(2) TOTAL CONTRACT PRICE.—For purposes of paragraph (1), the total contract price of all sales of personal property on the installment plan includes the amount of carrying charges or interest which is determined with respect to such sales and is added on the books of account of the seller to the established cash selling price of such property. * * *

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY.—

(1) GENERAL RULE.—Income from—

(A) a sale or other disposition of real property, or

(B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1,000,

may (under regulations prescribed by the Secretary) be returned on the basis and in the manner prescribed in subsection (a).

(2) LIMITATION.—Paragraph (1) shall apply only if in the taxable year of the sale or other disposition—

(A) there are no payments, or

This case was submitted under Rule 122, Tax Court Rules of Practice and Procedure, hence all of the facts have been stipulated and are so found.

Petitioners David C. Maddox and Dorothy S. Maddox, husband and wife, resided in Fullerton, Calif., at the time the petition herein was filed. They filed joint Federal income tax returns, on the cash basis of accounting, for the taxable years 1972 and 1973 with the Internal Revenue Service Center, Fresno, Calif.

Petitioners owned, in whole or part, 12 parcels of real property, each encumbered with a mortgage and/or trust deed. During the taxable years 1972 and 1973 petitioners sold said parcels and, except in one instance, their adjusted basis exceeded the existing amount of mortgage and/or trust deed on each property at the time of sale.[3]

The terms of each escrow entered into for the sale of the aforementioned real properties provided that the respective purchaser was to obtain a new loan secured by the property, the proceeds to be applied to pay off petitioners' existing mortgage and/or trust deed. The excess proceeds,[4] after satisfaction of petitioners' liabilities, were paid to petitioners at the close of escrow and constituted payments to them in the year of sale. Petitioners never had any obligation or liability under the new

---

(B) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.

(3) PURCHASER EVIDENCES OF INDEBTEDNESS PAYABLE ON DEMAND OR READILY TRADABLE.—In applying this subsection, a bond or other evidence of indebtedness which is payable on demand, or which is issued by a corporation or a government or political subdivision thereof (A) with interest coupons attached or in registered form (other than one in registered form which the taxpayer establishes will not be readily tradable in an established securities market), or (B) in any other form designed to render such bond or other evidence of indebtedness readily tradable in an established securities market, shall not be treated as an evidence of indebtedness of the purchaser.

[3]

| Property | Adjusted basis | Mortgage and/or trust deed |
|---|---|---|
| 1 | $54,541 | $50,000 |
| 2 | 54,541 | 50,000 |
| 3 | 54,541 | 50,000 |
| 4 | 54,541 | 50,000 |
| 5 | 54,541 | 50,000 |
| 6 | 54,541 | 20,000 |
| 7&8 | 109,081 | 100,000 |
| 9 | 54,541 | 50,000 |
| 10 | 160,963 | 165,000 |
| 11 | 179,813 | 170,000 |
| 12 | 230,632 | 220,000 |

[4]Sales prices exceeded the existing encumbrances on the respective properties. The excess was further reduced by closing adjustments such as reconveyance fees, sales commissions, insurance fees, etc.

financing arranged by the respective buyers. Petitioners maintained no ownership interest, nor any other proprietary interest in the properties sold following the closing of the respective escrows.

The sole issue for our decision is whether the payoff of existing mortgages and/or trust deeds, as directed by the terms of the escrows, with funds obtained from new loans secured by the same properties, from mortgagees different from those holding notes at the time of sale (except for property 12), constituted payments in the year of sale within the meaning of section 453. If so, then petitioners received payments in excess of 30 percent of the selling prices in the year of sale of the aforementioned real properties, and accordingly said sales do not qualify for installment method reporting under section 453(b)(2)(B).[5]

Petitioners contend on brief that the substitution through escrows of new mortgages for existing ones, under circumstances where they had no right to the mortgage proceeds, was tantamount to an *assumption* of the existing mortgages by the purchasers. In other words, as petitioners received only their redemption interests, i.e., the difference between the amount of the mortgages and the total sales prices, they were in exactly the same position as if the purchasers had directly assumed the mortgages existing on the properties at the date of sale and paid the balance of the purchase price with cash and promissory notes. Therefore, upon the purported assumption of the mortgages by the purchasers, the amounts of such mortgages are not included in determining the payments received in the year of sale (except for property 10, to the extent that the amount of a

---

[5]In the typical transaction herein total consideration was as follows:

| | |
|---|---:|
| Cash payment to petitioners | $7,000 |
| Second deed of trust (note) to petitioners | 7,250 |
| Cash payment to broker | 250 |
| First deed of trust to be obtained by buyer, "the proceeds of which shall be used to apply on purchase price." | 58,000 |
| Total selling price | 72,500 |

Noting again, for the buyers to obtain a first deed of trust, it was necessary to pay off petitioners' existing first mortgage. In escrow, proceeds from the buyer's first deed of trust were used to pay off petitioners' existing first mortgage. Therefore if the sales transaction does not qualify under sec. 453, the full amount of the second trust deed ($7,250) is taxable to petitioners in the year of sale instead of in installments as the mortgage payments are received.

mortgage exceeded the basis of the property) for the purposes of section 453. Sec. 1.453–4(c), Income Tax Regs.[6] While a rather close case, our analysis leads us to disagree.

By its terms the aforesaid regulation applies only where the mortgage is assumed or where the property is taken subject to the mortgage. *Voight v. Commissioner*, 68 T.C. 99 (1977), citing *Stonecrest Corp. v. Commissioner*, 24 T.C. 659, 666 (1955). In *Stonecrest* we stated, at page 666, that the terms taking property subject to or assuming the mortgage have "the meaning customarily attributed to them in transactions concerned with the transfer of mortgaged property." We then defined these terms as follows:

Taking property subject to a mortgage means that the buyer pays the seller for the latter's redemption interest, i.e., the difference between the amount of the mortgage debt and the total amount for which the property is being sold, but the buyer does not assume a personal obligation to pay the mortgage debt. The buyer agrees that as between him and the seller, the latter has no obligation to satisfy the mortgage debt, and that the debt is to be satisfied out of the property. Although he is not obliged to, the buyer will ordinarily make the payments on the mortgage debt in order to protect his interest in the property. Where a buyer assumes a mortgage on property, he pays the seller for the latter's redemption interest, and in addition promises the seller to pay off the mortgage debt. This promise of the buyer can ordinarily be enforced by the mortgagee. (Citations omitted.)

Thus under both terms a common element is that the vendor-mortgagor retains his liability, if only secondarily. Here the buyers did not assume petitioners' liabilities. In fact, petitioners had no liability, whatsoever, under any of the mortgages and/or trust deeds at the close of the respective escrows. As an integral part of each closing the purchaser obtained a new loan secured by the property, and petitioners' existing mortgage and/or trust deed was paid in full. Cancellation and payment, in the year of sale, of a seller's liability conclusively extinguishes his debt and constitutes a payment to the seller under section 453. *Batcheller*

---

[6]Sec. 1.453–4. Sale of real property involving deferred periodic payments.

\* \* \* \* \* \* \*

(c) *Determination of "selling price"*. In the sale of mortgaged property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser, shall, for the purpose of determining whether a sale is on the installment plan, be included as a part of the "selling price"; and for the purpose of determining the payments and the total contract price as those terms are used in section 453, and secs. 1.453–1 through 1.453–7, the amount of such mortgage shall be included only to the extent that it exceeds the basis of the property. \* \* \*

*v. Commissioner*, 19 B.T.A. 1050 (1930); *Wagegro Corp. v. Commissioner*, 38 B.T.A. 1225 (1938); *Hammond v. Commissioner*, 1 T.C. 198 (1942). See also *Sterling v. Ham*, 3 F. Supp. 386 (D. Me. 1933).

Moreover the Supreme Court stated in *Commissioner v. South Texas Co.*, 333 U.S. 496, 503 (1948):

> The installment basis of reporting was enacted, as shown by its history, to relieve taxpayers who adopted it from having to pay an income tax in the year of sale based on the full amount of anticipated profits when in fact they had received in cash only a small portion of the sales price.

Hence a potential hardship was alleviated with the line drawn, for the years in issue,[6] at 30 percent of the selling price. Here the cancellation, payment, and extinguishment in the year of sale of the petitioners' liabilities is the same as petitioners' receiving additional cash and then paying off their mortgages; and therefore, our holding does not offend the underlying purpose of the legislation.

Finally we find the cases cited by petitioners in support of their position clearly inapposite. In all three cases, *Waldrep v. Commissioner*, 52 T.C. 640 (1969), affd. 428 F.2d 1216 (5th Cir. 1970); *Richards v. Commissioner*, T.C. Memo. 1972–126; and *Voight v. Commissioner, supra*, the taxpayer-vendor remained liable, to some extent, to its or a new mortgagee and we held that the vendee assumed its seller's mortgage within the meaning of section 453. Moreover we stated in *Voight*, citing *Waldrep*, that although the transaction in issue was not an assumption in form, if the intention of the parties was that there shall be an assumption or that it may be implied from all the facts and circumstances therein, then in substance an assumption of the vendor's mortgage had occurred. In the instant case such an inference is not feasible.

*Decision will be entered under Rule 155.*

---

[6] It had previously been drawn at 25 and 40 percent. Sec. 212(d), Revenue Act of 1926, ch. 27, 44 Stat. 9; sec. 44(b), Revenue Act of 1928, ch. 852, 45 Stat. 791.