RONALD C. COFFIN and NANCY L. COFFIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Coffin v. Commissioner
Docket No. 10017-78.
United States Tax Court
T.C. Memo 1982-426; 1982 Tax Ct. Memo LEXIS 323; 44 T.C.M. (CCH) 606; T.C.M. (RIA) 82426; July 27, 1982. Jerome F. Goldberg and Harvey R. Fleishman, for the petitioners. Barry J. Laterman, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined income tax deficiencies of $123,218 and $2,334 against petitioners Ronald and Nancy Coffin for 1974 and 1975, respectively. The parties have reached agreement on several issues, leaving for our consideration only the question of whether the gain realized upon a sale of real property in 1974 may be reported on the installment basis under section 453, I.R.C. 1954. The case was submitted on the basis of a stipulation of facts. Petitioners, husband and wife, resided at Hampton Falls, New Hampshire, at the time their petition was filed. They filed a joint Federal income tax return with the Andover, Massachusetts, Service Center for *324 1974, the only year remaining in issue. On March 10, 1972, Ronald Coffin established the "Bellevue Ave. Realty Trust" (the Trust). At all times relevant to this case, Ronald Coffin was the sole trustee and he and Nancy Coffin were each 50 percent beneficiaries of the Trust. The Trust's principal asset was a lot located in Newport, Rhode Island, on which it constructed a nursing home. The construction was financed in the amount of $1,180,000 by the State Street Bank and Trust Company of Boston, Massachusetts (State Street), with the loan secured by a mortgage on the land and the improvements. Under the "Construction Loan Agreement" between the Trust and State Street, the principal was to be repaid in a lump sum due in 12 months, with interest due and payable monthly in the interim. The agreement is dated January 11, 1973. Although it was originally intended that the nursing home would be leased to an entity controlled by Ronald Coffin, the property was instead sold to Bellevue Avenue Health Center, Inc. (BAHC), an unrelated corporation, under an agreement of December 19, 1973. The closing in fact took place on or about April 24, 1974. The stated purchase price of $1,667,500 *325 was paid as follows: Down payment
$ 50,000.00
Cash at closing
1,250,000.00
Purchaser's obligation to
seller (Second Mortgage)
367,500.00
$1,667,500.00
The sales agreement provided that BAHC would obtain a first mortgage loan from "a recognized lending institution" in the amount of at least $1,250,000, and that the Trust would pay off the construction mortgage and deliver title to the property free of any encumbrances. BAHC in fact obtained a 25-year first mortgage loan in the amount of $1,300,000 from the Industrial National Bank of Rhode Island. At the closing, $1,136,734 of the cash payment was used to satisfy the then existing obligation under the construction loan, thus terminating State Street's mortgage interest in the property. In accordance with the sales agreement the balance of the purchase price (after the $50,000 down payment and the $1,250,000 payment at the closing) was paid by means of the purchaser's negotiable promissory note secured by a second mortgage on the property in favor of the Trust. BAHC was required to satisfy this obligation in monthly installments over a 10-year period, and in the year of sale (1974) the Trust received *326 principal payments on the second mortgage note in the aggregate amount of $7,976. At the time of the sale, the Trust's basis in the property was $1,041,371. After closing costs of $36,738, the Trust realized a gain on sale in the amount of $589,391. On its 1974 fiduciary income tax return, the Trust reported the gain on the installment basis as provided for in section 453, I.R.C. 1954. Petitioners, in turn, reported the gain in the same manner on their joint income tax return. In the statutory notice of deficiency, however, the Commissioner determined that the sale could not be reported on the installment method because payments in the year of sale exceeded 30 percent of the selling price. Under the installment method for reporting gain from the sale of property, the taxpayer may "return as income * * * in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price". Section 453(a)(1), made applicable to sales of real estate by section 453(b)(1)(A). [1] Use of this method for reporting gain from a sale of real property is precluded *327 under the provisions of the Code in effect during the taxable year, however, if payments in the year of sale exceed 30 percent of the selling price. Section 453(b)(1)(A) and (b)(2)(A)(ii), I.R.C. 1954. [2]
*328 In the year of sale, the following amounts were received by the Trust: Down payment
$ 50,000
Cash at closing
1,250,000
Second mortgage payments
7,976
$1,307,976
The selling price of the property was $1,667,500, and 30 percent of this amount is $500,250. It would appear, then, that the payments exceeded this threshold amount, and that the installment method for reporting the gain is unavailable to the Trust and petitioners. Petitioners contend, however, that the use of BAHC's mortgage proceeds to satisfy the Trust's construction mortgage was in substance an assumption by BAHC of the Trust's mortgage, rather than a sale for cash (and the second mortgage), with the result that only the cash in excess of the amount used to pay off the construction mortgage should be treated as a payment in the year of sale. This would reduce the cash payments to $171,222. [3] Under section 1.453-4(c), Income Tax Regs., [4] which applies when a mortgage obligation is assumed or property is taken subject to a mortgage obligation, the excess of the outstanding construction mortgage loan ($1,136,734) over the Trust's basis in the property ($1,041,371) would also be treated *329 as a payment in the year of sale ($95,363). Petitioners' approach, then, results in total payments in the year of sale of $266,585 ($171,222 + $95,363), well below the $500,250 disqualification threshold. Thus, according to petitioners, there has been compliance with the limiting provision of section 453(b)(2)(A)(ii), at least in substance if not in form, and the path is clear to enjoyment of the benefits of the installment method. We hold otherwise. *330 In Maddox v. Commissioner,69 T.C. 854 (1978), the Court addressed this very issue and held for the Government on facts which were quite similar to those before us. There, the proceeds of the purchaser's mortgage on each property were paid into escrow and then used to satisfy the sellers' mortgage, and the sellers received from the escrow only the excess proceeds. In determining whether, for purposes of the 30 percent test, the "payment" received was all of the cash or merely the cash remaining in escrow and the excess of each satisfied mortgage over the sellers' basis in the property, the Court considered the applicability of section 1.453-4(c), Income Tax Regs., and noted that it is limited to property as to which a mortgage is assumed or which is taken subject to a mortgage. In holding that this substitution of mortgages via an escrow account could not be classified as either an assumption of or taking subject to the sellers' mortgage, it was said (69 T.C. at 858): [U]nder both terms a common element is that the vendor--mortgagor retains his liability, if only secondarily. Here the buyers did not assume petitioners' liabilities. In fact, petitioners *331 had no liability, whatsoever, under any of the mortgages and/or trust deeds at the close of the respective escrows. As an integral part of each closing the purchaser obtained a new loan secured by the property, and petitioners' existing mortgage and/or trust deed was paid in full. Cancellation and payment, in the year of sale, of a seller's liability conclusively extinguishes his debt and constitutes a payment to the seller under section 453. (Citations omitted.) This language applies with equal force in the instant case. Indeed, the facts herein strongly reinforce the conclusion that there was not a continuation of the same liability by "substitution" of another mortgage indebtedness. Not only were the amounts different, but petitioners' mortgage indebtedness represented merely a construction loan from a Boston bank that had already matured and the purchaser's first mortgage indebtedness represented permanent financing obtained from a Rhode Island bank. Petitioners attempt to distinguish Maddox on the ground that the sellers therein retained no "proprietary" interest in the property, while petitioners had such an interest in the form of a second mortgage. Without expressing *332 any opinion as to the significance of the retention of an "ownership interest" in the form of a second mortgage, we note that in Maddox the sellers in fact held second mortgages on the properties. [5] Maddox is indistinguishable in this respect. Petitioners also argue that their second mortgage interest in a sense rendered them secondarily liable on the first mortgage. We find no evidence in the record to support such a contention, and in any event the argument is of no assistance to petitioners in distinguishing Maddox.[6]
*333 We hold that the decision in Maddox is dispositive of the issue presented herein, and the Commissioner's determination must therefore be sustained. Because of concessions, Decision will be entered under Rule 155.
Footnotes
1. This reference and all other references to sec. 453 herein are to the statute as it existed prior to its amendment by the Installment Sales Revision Act of 1980, 94 Stat. 2247, which is effective only for dispositions occurring after October 19, 1980, 94 Stat. 2256. The critical provisions of the statute applicable herein (n. 2, infra↩), do not appear in the revised provisions enacted in 1980. 2. SEC. 453. INSTALLMENT METHOD. (b) Sales of Realty and Casual Sales of Personalty.-- (1) General rule.--Income from-- (A) a sale or other disposition of real property * * * may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a). (2) Limitation.--Paragraph (1) shall apply-- (A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition-- (i) there are no payments, or (ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.↩
3. ↩
This figure is computed as follows: Down payment
$ 50,000
Second mortgage loan principal
payments
7,976
Cash at closing
$1,250,000
Less: Satisfaction of construction
mortgage indebtedness
1,136,754
113,246
$171,222
4. Sec. 1.453-4. Sale of real property involving deferred periodic payments. (c) Determination of "selling price". In the sale of mortgage property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser, shall, for the purpose of determining whether a sale is on the installment plan, be included as a part of the "selling price"; and for the purpose of determining the payments and the total contract price * * * the amount of such mortgage shall be included only to the extent that it exceeds the basis of the property.↩ (Emphasis supplied.)
5. See 69 T.C. at 857, n. 5: In the typical transaction herein total consideration was as follows: ↩
Cash payment to petitioners
$7,000
Second deed of trust (note) to petitioners
7,250
6. See n. 5, supra, and accompanying text. We note also that Voight v. Commissioner,68 T.C. 99 (1977); Waldrep v. Commissioner,52 T.C. 640 (1969), affd. 428 F. 2d 1216 (5th Cir. 1970); and Richards v. Commissioner,T.C. Memo. 1972-126, cases cited by petitioners in support of their argument that this transaction was in substance a mortgage assumption, were found to be "clearly inapposite" in Maddox,69 T.C. at 859↩. They are equally distinguishable here.