CHARLES R. KUCKLICK AND ELIZABETH T. KUCKLICK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kucklick v. Commissioner
Docket No. 29852-82.
United States Tax Court
T.C. Memo 1984-441; 1984 Tax Ct. Memo LEXIS 230; 48 T.C.M. (CCH) 902; T.C.M. (RIA) 84441; August 15, 1984. Gerard S. Spiegel, for the petitioners. Gregory A. Mazza and Powell W. Holly, Jr., for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge:* Respondent determined a deficiency in the petitioners' income tax for the year 1979 in the amount of $5,172.00. The sole issue for decision is whether the petitioners are entitled to report on the installment basis under section 453[1] gain on the sale of real property encumbered by a mortgage the balance of which on the date of sale ($73,669.64) exceeded *231 30% of the selling price ($150,000). Resolution of the issue involved herein depends upon whether the purchasers, who paid off the mortgage at the closing of sale, acquired the property subject to the mortgage. If the purchasers acquired the property subject to the mortgage, then satisfaction of the mortgage by the purchasers would not be deemed to be a payment to the petitioners in the year of sale and the petitioners could report their gain on the installment basis.However, if the property was not taken subject to the mortgage, then the satisfaction of the mortgage by the purchasers at closing would constitute a payment to the petitioners in the year of sale that exceeded 30% of the selling price, and therefore the petitioners would be foreclosed from reporting their gain on the installment basis. FINDINGS OF FACTS The facts have been fully stipulated and are so found. The stipulation of facts and exhibits attached thereto *232 are incorporated by this reference. At the time of the filing of the petition herein, the petitioners, Charles R. Kucklick and his spouse Elizabeth T. Kucklick (hereinafter sometimes referred to as "Charles" and "Elizabeth", respectively) resided in Stratford, Connecticut. In November, 1977, the petitioners purchased improved commercial real estate from William O'Reilly for $100,000. Petitioners paid O'Reilly $25,000 in cash and gave him a $75,000 purchase money mortgage (hereinafter sometimes referred to as "the O'Reilly mortgage") [2]. Pursuant to the terms of the O'Reilly mortgage, the entire balance became due and payable, at the mortgagee's election, upon a subsequent conveyance or transfer of the encumbered property. [3]
*233 On or before March 8, 1979, Charles investigated the possibility of selling the property to Anton Schadl and/or Julie Kish (hereinafter referred to as "Schadl" and "Kish"), both of whom were then tenants of the property.It was intended that the new purchasers would either assume or take the property subject to the O'Reilly mortgage. Charles wrote to O'Reilly advising him of the contemplated sale of the property to Schadl and Kish, and inquired as to whether O'Reilly would allow the new purchasers to assume the mortgage. O'Reilly indicated that assumption of the mortgage might be possible subject to a review of Schadl and Kish's credit worthiness. By May 2, 1979, it was determined that Schadl would purchase the property for $150,000 [4], with the closing schedled for June 1, 1979. Schadl decided that he would pay the O'Reilly mortgage in full at the closing. Accordingly, petitioners wrote to O'Reilly's attorney on May 2, 1979, requesting a mortgage release and advice as to the amounts required to pay off the mortgage as of June 1, 1979. By letter dated May 24, 1979, O'Reilly's attorney informed petitioners' attorney as to the pay off figures and sent him the requested release. *234 [5]
The sale of the property closed on June 1, 1979 as scheduled.On that date, the balance of the O'Reilly mortgage was paid in full. [6] The petitioners' adjusted basis in the property at the time of the sale was $97,796.00. ULTIMATE FINDING OF FACT Petitioners did not sell the *235 property subject to the O'Reilly mortgage. The purchasers' satisfaction of petitioners' liability on the O'Reilly mortgage constituted a payment in the year of sale to the petitioners. Petitioners received payments ($73,669.64) totalling more than 30% of the selling price ($150,000) in the year of sale. OPINION The controversy herein is governed by section 453 prior to revision by the Installment Sales Revision Act of 1980 (which generally applies to sales occurring after October 19, 1980) Pub. L. 96-471, 94 Stat. 2247 (1980). The pre-1980 version of section 453(b)[7] affords a taxpayer the option of installment reporting of the gain realized from a deferred payment sale of real property provided (a) there are two or more payments, and (b) the amount of all payments received in the year of sale does not exceed 30% of the selling price (hereinafter referred to as the "30% initial payment limitation"). *236 On their return for 1979, petitioners elected the installment basis to report gain on the sale of their property. Petitioners reported no recognized gain for 1979 (on the basis that they received no cash in that year from the sellers [8]), but they did report gain in subsequent years as payments were received. Respondent contends that satisfaction of the O'Reilly mortgage by the purchasers at closing constituted a payment to petitioners in the year of sale, and that therefore petitioners are not entitled to report the gain on the installment basis because the amount of the payments received in 1979 exceeded the 30% initial payment limitation. Generally, when a buyer satisfies the seller's debts in connection with an installment sale of property, the satisfaction of the seller's debts is treated as a payment in the year of sale in determining whether the 30% initial payment *237 limitation applies. Sallies v. Commissioner, 83 T.C.     (1984); Maddox v. Commissioner,69 T.C. 854, 858 (1978). See Sterling v. Ham,3 F. Supp. 386 (D. Me. 1933). The regulations, however, provide a special rule applicable to certain installment sales of mortgaged property. Section 1.453-4, Income Tax Regs., provides that where encumbered property is either sold subject to an existing mortgage, or the mortgage is assumed by the purchaser, the amount of the mortgage, in general, is not taken into account for purposes of determining the amount of payments received by the seller nor for the purposes of determining the contract price. [9] However, to the extent that the mortgage exceeds the seller's basis in the property, the excess is considered as a payment received and is included in the contract price. [10]
*238 In the present case, petitioners' adjusted basis in the property at the time of sale exceeded the unpaid balance of the O'Reilly mortgage. The petitioners argue that, as a factual matter, the purchasers took the property subject to the O'Reilly mortgage, and that therefore the exclusion provided in the regulation applies (i.e., the amount of the unpaid mortgage balance is not taken into account for purposes of the 30% initial payment limitation), with the result that the sale qualifies for installment reporting treatment. The respondent, on the other hand, contends that installment reporting is not available to the petitioners, because the purchasers neither assumed the O'Reilly mortgage nor took the property subject to the mortgage, and therefore the repayment of the mortgage at closing constituted a payment in the year of sale that exceeded the 30% initial payment limitation. As this Court pointed out in Voight v. Commissioner,68 T.C. 99 (1977), affd. per curiam 614 F.2d 94 (5th Cir. 1980), the terms used in the regulation, "property is merely taken subject to the mortgage" and "mortgage is assumed by the purchaser," have the meanings customarily *239 attributed to them in real estate transactions. In Stonecrest Corp. v. Commissioner,24 T.C. 659 (1955), we stated our understanding of these terms as follows: Taking property subject to a mortgage means that the buyer pays the seller for the latter's redemption interest, i.e., the difference between the amount of the mortgage debt and the total amount for which the property is being sold, but the buyer does not assume a personal obligation to pay the mortgage debt. The buyer agrees that as between him and the seller, the latter has no obligation to satisfy the mortgage debt, and that the debt is to be satisfied out of the property. Although he is not obliged to, the buyer will ordinarily make the payments on the mortgage debt in order to protect his interest in the property.Where a buyer assumes a mortgage on property, he pays the seller for the latter's redemption interest, and in addition promises the seller to pay off the mortgage debt. This promise of the buyer can ordinarily be enforced by the mortgagee. Stonecrest Corp., supra, 666. Furthermore, this Court has previously held that the actual and intended relationships created among *240 the parties, rather than the form of the transaction, determines whether or not the mortgage has been assumed or the property has been transferred subject to the mortgage. Voight v. Commissioner,supra at 112-113; Waldrepv.Commissioner,52 T.C. 640, 646 (1969), affd. per curiam 428 F.2d 1216 (5th Cir. 1970). In support of their contention that the purchasers took the property subject to the O'Reilly mortgage, the petitioners rely on the fact that the various documents executed in connection with the sale, i.e., the sale contract, the deed, and the purchase money mortgage taken back by the petitioners, all recite that the conveyance of the property was subject to the O'Reilly mortgage. The petitioners' argument is also premised on the facts that neither they nor their attorney ever received the mortgage proceeds at the closing and that the mortgage release was recorded after the deed to the buyers. While unquestionably these facts represent the formal indicia of a transfer of real property subject to an existing mortgage, they are not decisive of the question here of whether or not the property in fact was sold subject *241 to the O'Reilly mortgage. Although the evidence shows that O'Reilly, the mortgagee, would have allowed a conveyance of the property subject to the mortgage if the purchasers qualified as credit worthy, there is no suggestion in the record that the purchasers submitted to a credit review. The evidence indicates, rather, that as early as May 2, 1979, the date on which petitioners' attorney requested a release from O'Reilly's attorney, the purchasers sought a transfer of the property unencumbered by the mortgage. The fact that petitioners' attorney requested the release and the mortgage pay-off figures from O'Reilly's attorney establishes that the petitioners, prior to the closing, were aware of, and acquiesced in, the purchasers' intention. We find therefore that there was no mutual intention that the property would be transferred subject to the O'Reilly mortgage, and that in fact an unencumbered transfer occurred. We find support for our conclusion here in our decisions in Maddox v. Commissioner,69 T.C. 854 (1978), and in Sallies v. Commissioner, 83 T.C.     (1984). The issue in Maddox was whether there had been an assumption where the escrow closing *242 agreements required the purchaser to obtain new loans, the proceeds of which were to be applied to pay off the petitioners' existing mortgages.Reasoning that the vendor-mortgagor retains his liability, even if only secondarily, where either the property is transferred subject to a mortgage or the mortgage is assumed, we held that the substitution through escrows of new mortgages for existing mortgages did not amount to an assumption where the petitioners retained no liability whatsoever on any of the mortgages at the close of the escrows. Sallies v. Commissioner, 83 T.C.     (1984), presented the issue before us in a factually similar context. We held there that, despite recitations in the deed to the contrary, the purchaser neither assumed the seller's mortgage liability nor took the real estate subject to the mortgage where the seller retained no liability on the mortgage after the sale because the purchaser had paid off the seller's mortgage liability at the closing. In the present case, the petitioners' liability on the O'Reilly mortgage was extinguished on the date of closing. Thus, under Maddox and Sallies, the absence of any retained mortgage liability on *243 the part of the petitioners undermines their claim that the conveyance was subject to the O'Reilly mortgage. Given our finding that the property was not conveyed subject to the O'Reilly mortgage, it follows that the cancellation and payment of the O'Reilly mortgage in the year of sale constitutes a payment to the petitioners for the purposes of Section 453. Sallies v. Commissioner, supra at    ; Maddox v. Commissioner,supra, at 858. See Sterling v. Ham,3 F. Supp. 386 (D. Me. 1933). Since the amount of the cancelled mortgage liability ($73,669.64) exceeds 30% of the selling price ($150,000), the installment reporting election under section 453 is not available. Finally, petitioners maintain that a decision in their favor is warranted on the ground of equity. Without question the purpose of section 453 is to mitigate the hardship that would otherwise occur if tax were immediately imposed upon the gain from an installment sale where the taxpayer has received in cash but a small portion of the sales price. Commissioner v. South Texas Lumber Co.,333 U.S. 496, 503 (1948). The 30% initial payment limitation of section *244 453(b), however, represents an attempt to differentiate between those cases where the imposition of the tax would pose a hardship and those where it would not. [11] In Maddox,supra, we pointed out that the satisfaction of the petitioners' mortgage liability in the year of sale is equivalent to the petitioners' receiving cash and then paying off the mortgage. In the present case, the extinguishment of the petitioners' liability on the O'Reilly mortgage is equivalent to their receipt of cash. We conclude therefore that our decision herein results in no undue hardship and is consistent with the legislative purpose underlying the statutory limitation. Accordingly, *245 Decision will be entered for the respondent.
Footnotes
*. By order from the Chief Judge this case was reassigned from Judge Darrell D. Wiles to Judge Julian I. Jacobs↩. 1. All statutory references are to the Internal Revenue Code of 1954, as amended, and as in effect in 1979, unless otherwise indicated.↩
2. Although Charles contracted to purchase the property, title to the property was taken in Elizabeth's name. Both Charles and Elizabeth were liable on the purchase money mortgage note given to O'Reilly. ↩
3. The pertinent provision in the mortgage provided: The Grantee, at his option, may elect to declare the entire indebtedness secured hereby to be immediately due and payable if the borrower, or any successor in title to all or part of its interest in the Premises, shall convey or suffer any conveyance or transfer of all or any portion of its interest in the Premises.↩
4. On May 10, 1979, Schadl (and not Kish) signed the contract of sale. Title to the property was ultimately taken in the names of Schadl, Maria Schadl and Margaret Gross. ↩
5. Both O'Reilly's attorney and petitioners' attorney agreed that the latter would hold the release in trust until the mortgage balance was paid in full.↩
6. The outstanding principal balance of the O'Reilly mortgage as of June 1, 1979 was $73,091.00. Interest accrued to the date of closing amounted to $578.64. The adjusted purchase price of the property was $150,999.64. The closing statement reflected the following credits to the purchaser: Deposit
$1,500.00
Purchase Money Mortgage
75,000.00
Assumption of O'Reilly Mortgage
73,669.64
Tenant Security Deposit
830.00
TOTAL
$150,999.64
The parties did not stipulate as to whether the O'Reilly mortgage was paid off before, during or after closing.↩
7. SEC. 453(b). SALES OF REALTY AND CASUAL SALES OF PERSONALTY.- (1) GENERAL RULE.-Income from- (A) a sale or other disposition of real property, or (B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1,000, may (under regulations prescribed by the Secretary) be returned on the basis and in the manner prescribed in subsection (a). (2) LIMITATION. - Paragraph (1) shall apply only if in the taxable year of the sale or other disposition- (A) there are no payments, or (B) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price. (3) PURCHASER EVIDENCES OF INDEBTEDNESS PAYABLE ON DEMAND OR READILY TRADABLE. - In applying this subsection, a bond or other evidence of indebtedness which is payable on demand, or which is issued by a corporation or a government or political subdivision thereof (A) with interest coupons attached or in registered form (other than one in registered form which the taxpayer establishes will not be readily tradable in an established securities market), or (B) in any other form designed to render such bond or other evidence of indebtedness readily tradable in an established securities market, shall not be treated as an evidence of indebtedness of the purchaser.↩
8. Apparently since the selling expenses ($2,173), which are not specifically set forth in the record, exceeded the $1,500 deposit paid to the petitioners upon signing of the contract for sale, petitioners take the position that they received no payments in the year of sale for purposes of section 453↩.
9. Section 1.453-4, Income Tax Regs., provides, in relevant part, as follows: (c) Determination of "selling price". In the sale of mortgaged property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser, shall, for the purpose of determining whether a sale is on the installment plan, be included as a part of the "selling price"; and for the purpose of determining the payments and the total contract price as those terms are used in section 453, and sections 1.453-1 through 1.453-7↩, the amount of such mortgage shall be included only to the extent that it exceeds the basis of the property. The term "payments" does not include amounts received by the vendor in the year of sale from the disposition to a third person of notes given by the vendee as part of the purchase price which are due and payable in subsequent years. Commissions and other selling expenses paid or incurred by the vendor shall not reduce the amount of the payments, the total contract price, or the selling price. 10. The amount of the mortgage however is taken into account for purposes of determining the selling price.↩
11. As we stated in Maddox, supra, the initial payment limitation is the line drawn by Congress.The 1926 Act imposed a 25% limitation, Sec. 212(d), Revenue Act of 1926, ch. 27, 44 Stat. 9, which was increased in 1928 to 40% by section 44(b) of the Revenue Act of 1928, ch. 852, 45 Stat. 791. The limitation was changed to 30% by section 44 of the Revenue Act of 1934, ch. 277, 48 Stat. 694, on the ground that the higher limitation permitted postponement of tax in cases where there was sufficient cash available in the year of sale. H Rept. No. 704, 73d Cong., 2d Sess. 24 (1934), 1939-1 (Part 2) C.B. 554, 572; S. Rept. No. 558, 73d Cong., 2d Sess. 28 (1934), 1939-1 (Part 2) C.B. 586, 608↩.